St. Louis National Bank, Appellant, *v*. William P. Ross, Respondent.

December 7, 1880.

9   399<br>37  367

1. Where notes are executed to a factor, and goods are shipped to him to be sold and the proceeds applied to the payment of the notes, a pledgee who takes the notes and the goods as collateral for advances, with notice that the pledgor is a factor, is bound to apply the proceeds of the goods to the payment of the notes; and these facts constitute a defence to an action on the notes by the pledgee against the maker.

2. Where the cause is tried upon the material questions at issue between the parties, if these issues are made by the instructions, the question that they were not properly made by the answer cannot be raised for the first time in the appellate court.   In such a case the defects in pleading do not constitute any jeofail after verdict.

3. The admissions of a stranger to the suit need not necessarily be excluded where the mutual rights of the stranger to the record and a party to the suit are necessarily involved in the issues tried.

4. Testimony of the factor's customers that they purchased of him by sample, and were sent to the bank, the pledgee in this case, to pay the purchase-money and receive in exchange the warehouse receipts, was competent as tending to show notice to the bank.

5. Goods may be pledged by the delivery of the warehouse receipt, though it be not indorsed.

Appeal from the St. Louis Circuit Court, Thayer, J. *Affirmed*.

Hitchcock, Lubke & Player, for the appellant: Under the Practice Act of this State, a defendant sued upon a contract is not permitted to set up, by way of *defence* thereto, as distinguished from *counter-claim*, a claim against the

plaintiff for damages for a tort alleged to have been committed by plaintiff in respect of defendant's property. — Rev. Stats. sects. 3521, 3522; *Gordon* v. *Bruner*, 49 Mo. 572; *McAdow* v. *Ross*, 53 Mo. 203–207. Such a claim by defendant as above mentioned is not pleadable as a set-off, not being a debt; *a fortiori*, it is not equivalent to a plea of payment. — *McAdow* v. *Ross, supra; May* v. *Kellar*, 1 Mo. App. 385. A defence of new matter, not pleaded by way of counter-claim in accordance with the statute requirements above mentioned, and which does not go to the plaintiff's right of action, but merely sets up in opposition thereto facts pleadable (if at all) only by way of counter-claim, is no defence in law. To such a defence plaintiff need file no reply; and instructions which proceed on the theory that such new matter (not being pleadable and properly pleaded by way of counter-claim), if proved, can support a verdict for the defendant, are based upon an immaterial issue, and erroneous. — Bliss on Code Pl., sect. 368; *Tarwater* v. *Hannibal, etc., R. Co.*, 42 Mo. 196; *Jamison* v. *City of Springfield*, 53 Mo. 231 (par. 2); *Rapp* v. *Vogel*, 45 Mo. 524. The testimony of Southworth, Picton, Paton, and other buyers, as to the manner in which they purchased cotton from Dowell & Co., was also irrelevant. And the ruling of the court made in presence of the jury as to the value and effect of such testimony was grave error, as in effect directing the jury to draw certain conclusions of fact from said evidence. — *The State* v. *Smith*, 53 Mo. 267; *Jones* v. *Jones*, 57 Mo. 138; *Rothschild* v. *American Central Ins. Co.*, 62 Mo. 356; *The State* v. *Elkins*, 63 Mo. 159; *Corby* v. *Wright*, 4 Mo. App. 452.

SILAS B. JONES, for the respondent: Goods may be assigned by the delivery of the warehouse receipt. — *Erie, etc., Dispatch* v. *Compress Co.*, 6 Mo. App. 172; *Rice* v. *Cutter*, 17 Wis. 351; *Skilling* v. *Bollman*, 6 Mo. App. 76. Where the payee of a negotiable promissory note, payable to

his order, transfers the same by delivery only, without indorsement, his transferee is not clothed with the rights of an indorsee of negotiable paper, but he holds the same subject to the rules applicable to the case of an assignment of any mere chose in action.  As a consequence, a note so transferred is open to every defence which the maker has against it at the time he becomes aware of the transfer ; and hence a payment to the payee, before notice of such transfer, discharges the note. — *Patterson* v. *Cave*, 61 Mo. 439 ; *Boeka* v. *Naella*, 28 Mo. 180 ; *Hedges* v. *Sealy*, 9 Barb. 214 ; *Jones* v. *Witter*, 13 Mass. 304, 307 ; *Hackett* v. *Martin*, 8 Me. 79 ; 1 Dan. Neg. Inst., sect. 741 *et seq.* Possession of the bill of lading for the goods by the factor does not give him any greater powers as to third persons than possession by him of the goods. — *Newsom* v. *Thornton*, 6 East, 17 ; *Martini* v. *Coles*, 1 Mau. & Sel. 140 ; *Skilling* v. *Bollman*, 6 Mo. App. 76, 80.  A factor cannot pledge his principal's goods. — *Benny* v. *Rhodes*, 18 Mo. 147 ; *Benny* v. *Pegram*, 18 Mo. 191.  That he has advanced money upon them gives him no such right. — *Howard* v. *Smith*, 56 Mo. 314 ; *Warner* v. *Martin*, 11 How. 209.  One who is aware that one offering to pledge a warehouse receipt is a factor, is not an innocent purchaser. — *Buckner* v. *Jones*, 1 Mo. App. 538 ; *McDaniel* v. *Wood*, 7 Mo. 543 ; *Benoist* v. *Siter*, 9 Mo. 657 ; *Renshaw* v. *Wills*, 38 Mo. 201 ; *Mechanics' Bank* v. *Schaumburg*, 38 Mo. 228.

BAKEWELL, J., delivered the opinion of the court.

This is an action upon five negotiable promissory notes. made by respondent, payable to the order of J. H. Dowell & Co.  The notes were dated at various periods between September, 1877, and September, 1878 ; were payable in periods ranging from ninety days to six months, and were for various amounts, aggregating about $2,800.  The petition alleged that these notes were each indorsed and delivered to plaintiff for value before maturity.  The answer admitted

the execution of the notes, but denied all other allegations of the petition, specially that the notes in question were acquired before maturity and for value; and alleged that all the notes were paid by the maker whilst they were in the possession of the payee. And as an affirmative defence, the answer set up that after the notes came into possession of plaintiff, defendant consigned to Dowell & Co., the payees, who were cotton-factors in St. Louis, a large amount of cotton, the property of defendant, with instructions to them to sell this cotton and apply the proceeds to the payment of these notes; that Dowell & Co., on receipt of the cotton, in violation of plaintiff's instructions and of the duty of Dowell & Co., delivered all of said cotton to plaintiff; that plaintiff, on receipt of this cotton, caused it to be sold, and received the proceeds, which were more than enough to fully pay these notes; that plaintiff, instead of applying the proceeds of the cotton to the payment of the notes, applied the proceeds to the payment of debts due by Dowell & Co. to plaintiff, in which defendant had no concern; that plaintiff was well aware at the time that said cotton belonged to defendant, and was consigned to pay these notes; and that Dowell & Co. were guilty of a breach of trust in turning the cotton over to plaintiff to sell and apply the proceeds to the payment of indebtedness of Dowell & Co. to plaintiff; that Dowell & Co. informed defendant that the proceeds of the cotton had been applied to the payment of the notes, and that the notes had been cancelled, all which plaintiff knew; that plaintiff well knew at the time that defendant did not become aware that said notes had not been cancelled until long afterwards, and after the firm of Dowell & Co. had dissolved and had become insolvent; and that neither Dowell & Co. nor plaintiff have paid to defendant any of the proceeds of the cotton received and sold as aforesaid by plaintiff. After pleading these facts as a defence to the action, defendant sets them up in his answer by way of counter-claim, setting forth that

the proceeds of the cotton thus received by plaintiff were $16,000, of which Dowell & Co. paid to defendant $8,000, leaving $8,000 due, for which defendant asks judgment.

On the trial of the cause, it appeared from the evidence that defendant kept a country store in Arkansas, where he dealt to some extent in cotton. Dowell & Co., in St. Louis, were his factors, and all the cotton of defendant was shipped to them for sale. The firm of Dowell & Co. was dissolved on March 12, 1879, by the death of Dowell. Prior to that date they had been doing a large business as cotton-factors. The notes sued on were given by defendant to Dowell & Co. for moneys and supplies furnished by them to him, on the understanding that defendant would ship cotton to Dowell & Co., which they were to sell as his factors, and out of the proceeds of which sales they were to pay these notes. The notes were charged by Dowell & Co. to defendant in their running account with him, as they matured, and the net proceeds of the sales of his cotton were credited to him on the same account. From time to time statements of account were furnished by Dowell & Co. to defendant; and at the date of Dowell's death the balance in favor of defendant, after applying the proceeds of cotton to these notes and the advances of Dowell & Co., was about $700. It was not until after Dowell's death, at the institution of this suit, that defendant learned that the notes which he had given to Dowell & Co., and which, by the statements of account forwarded to him, appeared to be all paid, had never been cancelled, but were held by plaintiff as a claim against him.

The banking business of Dowell & Co. had been done with plaintiff for many years before Dowell's death. It was in evidence that they had a course of dealing with plaintiff during the cotton season beginning in September, 1878, up to Dowell's death, by which Dowell & Co. pledged to plaintiff all the cotton they received — about twenty thousand bales. The bills of lading of the customers of

Dowell & Co., who resided for the most part in Arkansas and Texas, were forwarded to St. Louis, and were by Dowell & Co. deposited with the plaintiff, who would thereupon make loans to Dowell & Co. at the rate of $40 for each bale of cotton. The bills of lading were thus pledged by Dowell & Co. and received by defendant, without any statement or inquiry as to the right of Dowell & Co. to make such pledges. The cotton, on arrival at St. Louis, was stored in the warehouse of the Cotton Compress Company; and Dowell & Co. then gave an order on the company to plaintiff, directing the company to deliver to plaintiff the warehouse receipts. As the cotton arrived, the company gave warehouse receipts for each bale; these receipts were taken to the office of Dowell & Co., where memoranda were made of the numbers and marks, and the receipts were then delivered to plaintiff. When Dowell & Co. had sold the cotton, — in which transaction Dowell & Co. seem to have acted as if they were mere agents of plaintiff, — the proceeds invariably passed at once to plaintiff; the payments were usually made direct to plaintiff, the checks being made payable to plaintiff's order. If any of the checks were payable to Dowell & Co., it does not appear that they were delivered to them. Plaintiff held the cotton in all cases until it received the proceeds of the sale. Plaintiff delivered the warehouse receipts to the purchaser, received the price, and took out from the proceeds $40 a bale, which it applied to the indebtedness of Dowell & Co. to plaintiff.

The notes sued on were delivered by Dowell & Co. to plaintiff as collaterals. Two of the notes, that for $567 and that for $643, were not indorsed by Dowell & Co., but were transferred to appellant by delivery. The verdict and judgment were for defendant on the notes and for plaintiff on the counter-claim.

The court, at the instance of plaintiff, instructed the jury that plaintiff is presumed in law to be an innocent holder for

value of the two notes of July 6th and May 22d, which were indorsed, and also instructed that defendant could not recover on the counter-claim.

For defendant, the court instructed the jury to find for defendant as to the note of August 23d, for $543; also, that if the jury find from the evidence that defendant, in his dealings with J. H. Dowell & Co., paid the two notes not indorsed, before he knew that plaintiff claimed an interest in them, they will find for the defendant as to those notes.

The court also, at the instance of defendant, gave an instruction referred to as instruction No. 6, which is as follows: "The court instructs the jury that if they find from the evidence that J. H. Dowell & Co. were cotton-factors, and that there was an understanding between them and the defendant that he should ship cotton to them for the purpose of being sold by them and the proceeds applied by them to the payment of all the notes sued on in this action, and that the defendant did, in pursuance of that understanding, ship sufficient cotton to Dowell & Co. for the purpose of paying all of said notes, and that Dowell & Co. pledged said cotton as their own property to the plaintiff, without any regard to what the defendant owed Dowell & Co. at the time, and that plaintiff knew that Dowell & Co. had received and held said cotton at the time in their capacity as cotton-factors, and that upon a sale of said cotton plaintiff received the proceeds thereof and applied the same to the payment of debts due from Dowell & Co. to plaintiff, then, without any regard whatever to whether plaintiff knew that said cotton had been shipped to Dowell & Co. by the defendant for the purpose of paying the notes sued on, the jury will find for the defendant on all the notes sued on."

The court, of its own motion, gave the following instructions: "As to the notes dated July 6, 1878, for $650, and May 22, 1878, for $343.42, the court instructs the jury as

follows : If you find that said notes were indorsed by J. H.
Dowell & Co., and delivered to the plaintiff before maturity
and for a valuable consideration, and that they have not
been paid to plaintiff, then you must find for the plaintiff
the amount due on said two notes of principal and interest,
unless the defendant has made out the defence to said notes
stated in instruction No. 6, and you find the facts to be as
stated in said instruction. Said notes were indorsed and
delivered for a valuable consideration, within the meaning
of this instruction, if plaintiff either bought the notes and
paid for them, or if the plaintiff took said notes as security
for advances made to said Dowell & Co. at the time of
the delivery thereof, or subsequently thereto. And if said
notes were taken as security for advances made, or to be
made, plaintiff has the right to hold said notes until such
advances were fully paid. As to the notes dated Septem-
ber 6, 1878, for $643.84, and September 3, 1877, for $567,
the court instructs you that if said notes were delivered by
J. H. Dowell & Co. to the plaintiff for a valuable considera-
tion, and have not been paid to the plaintiff, then plaintiff
may recover on said notes, even though Dowell & Co. never
indorsed the same, unless you believe that the defendant
paid the amount of said notes to Dowell & Co. before he
had any notice of the delivery of the same to the plaintiff.
Such notes must be regarded as transferred for a valu-
able consideration if they were transferred for advances
made, or to be made, to Dowell & Co. by the plaintiff.''

Instructions asked by plaintiff on the theory that there
could be no valid pledge of the cotton without a written
indorsement of the warehouse receipts, and also other
instructions based upon appellant's theory of the case, were
refused by the court. These instructions will be noticed in
the course of the opinion, so far as it is deemed necessary
to do so.

There can be no question, on the testimony, that both
the cotton-notes, or warehouse receipts, and the notes sued

on in this action were pledged by Dowell & Co. without
the consent of defendant, to plaintiff, to secure an indebted-
ness of Dowell & Co. to plaintiff; nor that Dowell & Co.
received of defendant cotton enough to pay the notes, and
that the proceeds of the cotton ought, according to the
agreement between Dowell & Co. and Ross, to have been
applied to the payment of the notes. This was shown by
the testimony of the witnesses on both sides. It is also
clear that plaintiff knew that Dowell & Co. were dealing as
cotton-factors. There is some testimony of the president
of the bank that he had heard from Dowell that he had a
plantation in Arkansas, and had cotton of his own ; and the
employees of Dowell testify that the firm occasionally owned
a bale or two of cotton which had been rejected by the pur-
chaser, and which the firm was thus compelled to take.
But there can be no question that the cotton pledged by
Dowell & Co. to the bank from September to March, includ-
ing all the cotton of defendant, was the cotton of customers
of Dowell & Co., and that the bank knew that it was so, or
took it without caring to ascertain the facts, and with
notice.

There was no question presented of a transfer by a factor
of his lien to a third party, to be held, together with the
goods, until the lien has been discharged. The pledge of
the cotton was such as a factor intrusted with the goods to
sell had clearly no right to make. Here, the factor, to en-
able him to do a large business on a small capital, was pledg-
ing all consignments as fast as received, to secure loans in
bank, in violation of his instructions. The bank knew
that the cotton it was thus receiving was consigned to
Dowell & Co. as factors, and therefore knew that this use of
the cotton by Dowell & Co. was unlawful. The plaintiff,
in a proper proceeding, might, we think, have been com-
pelled to apply the proceeds of this cotton as the owner
himself would have applied it ; and, upon the evidence, the
judgment was for the right party, and we do not see why it
should be disturbed.

It is contended by appellant that the new matter in the answer could not be pleaded as a defence to the action, either legal or equitable; moreover, that it was not properly pleaded as a legal or equitable defence; and that the instructions which proceed on the theory that this new matter, if proved, could support the verdict, were therefore based on an immaterial issue, and erroneous.

If the facts, properly pleaded, constituted a defence to the action, and the issue contested before the jury and made by the instructions was one decisive of plaintiff's claim, as there is no question of surprise, there can have been no defect in the pleadings on the part of defendant which, on the doctrine of aider by verdict, and under the statute of jeofails, ought to be held ground enough for disturbing this judgment in the appellate court, where the attention of the trial court has not been called to the defect in pleadings, and no opportunity has been given to amend.

We have no doubt that the facts in evidence, and submitted to the consideration of the jury by the instructions, constituted even a legal defence. If Ross gave to Dowell & Co. his notes, to be paid by cotton to be shipped to Dowell & Co. to sell as the factors of Ross, and Dowell & Co. pledged the cotton and the notes to the bank, to obtain credit with the bank and to secure their general indebtedness to the bank, and the bank had notice that Dowell & Co. had no right to pledge this cotton, and the bank received the proceeds, the bank was legally bound to apply these proceeds to the credit of Ross. So applied, it paid the notes in the hands of the bank. These facts were in the answer set up in bar of the action. That they were not expressly pleaded as payment, and that the answer contains the affirmative statement that the plaintiff did not apply the money of Ross in its hands to the payment of the note, but applied it to another purpose, ought not to be fatal to the judgment. The case really was tried on the material questions at issue between the parties, and which dispose of the

·case.   If these issues were not properly made by the pleadings, they were at least made by the instructions ; and the technical objection to the pleadings in that case is urged too late in the appellate court.   The issues joined in this case, ·made by the whole conduct of the case on either side, and by the instructions, required proof of facts which constituted a defence to the action on the notes.   There was evidence of these facts, and the alleged defects in the pleadings are therefore immaterial ; they do not constitute any jeofail after verdict.

It is claimed that the court erred in instructing that the note dated August 23, 1878, was paid.   Mr. Burr, the chief officer of plaintiff, testifies expressly that this note was paid, and charged to Dowell's account.   We do not see, therefore, that the court erred in withdrawing this note from the consideration of the jury, as Mr. Burr was not contradicted.   But, inasmuch as the finding as to the other notes is necessarily conclusive as to this, and under the facts as found, and the instruction No. 6, ·there could be no recovery on any of the notes, this error, if error, is immaterial.

It is contended by appellant that the testimony of Betts, ·on cross-examination, as to the accounts kept between Dowell & Co. and the defendant, and the admission of these ·accounts, and the testimony of defendant himself as to the ·understanding between Dowell & Co. and himself that the proceeds of the cotton were to be applied to the payment ·of the notes, in the absence of any proof that plaintiff had any knowledge of the transactions between the firm ·and defendant, was inadmissible ; that such matters were *res inter alios acta*, and irrelevant.   It is true that Dowell ·& Co. were not parties to this suit, and that the general rule is that the admissions of third parties, strangers to the suit, are to be excluded.   But we do not think that the present case falls within the rule.   The mutual rights of Dowell & Co. and the defendant were necessarily involved

in the issues, and we think it was competent to show by the admissions of Dowell, and by the statements of account furnished by Dowell & Co. to defendant, that they received the cotton to apply the proceeds, when sold, to the payment of these notes. That defendant was led by their representations into the belief that it had been so applied, was a natural consequence of the transaction. The fact is not material, but its introduction could not prejudice plaintiff's case.

The testimony of Southworth, and of many others who purchased cotton from Dowell & Co. from September to March, and who showed that the course of dealing of Dowell & Co. was to refer them to the bank for the delivery of the cotton-notes, after the cotton had been sold by sample, is objected to as irrelevant. Burr had said in evidence that the bank had nothing to do with the sale of cotton. Defendant showed by these witnesses that the parties buying cotton by sample went to the bank and paid the money there. In answer to the objection of plaintiff the court said, in the presence of the jury: "I think the testimony is competent for the purpose of showing that the St. Louis National Bank, when they took bills of lading for collateral notes of Dowell & Co., knew that the cotton so being hypothecated was cotton which they held as factors. Suppose they took this cotton, which they knew Dowell held as a factor, as collateral security on a demand-note which was given by Dowell to the bank, and it afterwards transpired that this cotton was consigned for the purpose of paying these notes — is not that a defence to the notes? My judgment would be that they would be just as culpable in taking the money under such circumstances as if they actually took the cotton into their possession. I don't think they could come into court and say that they did not get the cotton. The testimony that is now proposed to be offered by this witness to show what the mode of business was with respect to this cotton, I think is competent upon the issue of

whether the bank knew that this was the cotton of Ross, which Dowell & Co. held as factors."

We think that this evidence was competent as tending to show that Dowell & Co., dealing as cotton-factors, were pledging habitually the cotton of their customers with the bank, and that the bank had notice of the fact, and had enough to put it on inquiry as to whether this particular cotton of Ross was received by Dowell & Co. under such circumstances as would warrant a pledge of it by Dowell & Co. to the bank as collateral security for their indebtedness to the bank.

The court properly refused instructions asked by appellant to the effect that there could be no pledge of the cotton by Dowell & Co. without a written indorsement of the warehouse receipts. Where the party has the right to pledge the cotton, the delivery of the warehouse receipt would be as effectual as the delivery of the cotton itself, and it could make no difference that the warehouse receipt was not indorsed by the pledgeor. There is nothing in this at variance with anything decided or said by this court in *Erie and Pacific Dispatch* v. *St. Louis Cotton Compress Company*, 6 Mo. App. 172. The transfer of a warehouse receipt not made negotiable by indorsement and delivery can convey to the transferee no greater rights than would be acquired by a transfer of the goods which the receipt represents. That we have said. But it does not follow from that, that one may not pledge cotton by delivering the unindorsed cotton-note, as effectually as by delivering to the pledgee the bales themselves.

We think the judgment should be affirmed, and it is so ordered. All the judges concur.