COMMONWEALTH *vs.* CERTAIN INTOXICATING LIQUORS, WRIGHT DRUG COMPANY, claimant.

Bristol.   November 13, 1894. — January 15, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Intoxicating Liquors — Forfeiture — Claimant.*

Intoxicating liquors are subject to forfeiture if the servant of the owner, who has immediate charge and control of them, intends to sell them contrary to law. The law deals with the *res* as itself liable to offend.

COMPLAINT, for a warrant to search for intoxicating liquors, alleged to be kept in a building in New Bedford occupied by Edward E. Wright as a drug store, and intended for sale by him in this Commonwealth contrary to law.   The Wright Drug Company appeared, and claimed the liquors seized as its own.

Trial in the Superior Court, before *Aldrich*, J., who, having directed the jury to find that the liquors were illegally kept by Wright as set forth in the complaint, rendered judgment that the liquors and vessels containing them be forfeited to the Commonwealth, and, at the request of the claimant, reported the case for the determination of this court.   If the ruling and judgment were right, the judgment was to be carried into execution ; otherwise, the finding of the jury and the judgment were to be set aside, and an order passed that the liquors and vessels be returned to the claimant.

*W. Clifford & W. M. Butler*, for the claimant.

*L. E. White*, District Attorney, for the Commonwealth.

HOLMES, J.    The liquors in question were owned by the claimant, the Wright Drug Company, a corporation.    They were kept in a store which belonged to the corporation, and which, as we understand the report, was occupied by it for its business.    They were intended by the directors to be sold lawfully by Wright, the treasurer of the corporation and salaried manager of the store under a license of the sixth class held by him.    Wright was selling and intending to sell them unlawfully, but this was without the knowledge or consent of the directors.    The question is whether the facts recited prevent a forfeiture of the liquors under a complaint charging that they were kept and intended for sale by Wright contrary to law.

The claimant's argument is that Wright was not a bailee, but only a servant, that the company retained the possession of the liquors, and that therefore, as its intent was lawful, the liquors were kept for lawful purposes, and the principle of *Commonwealth* v. *Intoxicating Liquors*, 107 Mass. 396, does not apply. We accept the premises of this argument so far as to assume, for the purposes of this decision, that Wright had not possession of the liquors, nor any special property in them, and therefore that the case is not helped by Pub. Sts. c. 214, § 14.    But the principle of the case cited is that the liquor is dealt with as being itself a subject, and as liable to offend notwithstanding the innocence of its owner, like a ship in the admiralty.    From this point of view the guilt or innocence of the *res* does not depend upon possession, but may depend upon the intent of the person actually in control of it, although without possession.    The master of a vessel may make it liable in this way, although he is only a sort of servant of the owners.    By Pub. Sts. c. 100, § 32, the warrant shall set out "the person believed to be the owner, possessor, or keeper of such liquor."    The words "or keeper," following "owner" and "possessor," imply that one who is neither owner nor possessor may be a keeper within the meaning of the statute, and warrant the inference that, if the intent of such a person is to sell unlawfully, the liquor may be forfeited under § 37, as "kept . . . for the purpose of being sold in violation of law."

It might be urged, although the point was not taken distinctly,

that even if the liquors were subject to forfeiture on a charge that they were owned or possibly that they were kept by the Wright Drug Company, on the ground that the company were answerable for the intent of its servant in control and intrusted with the sale of the goods, they could not be said to be kept by one who was not in possession of them. We have already answered this contention in part by the reference to § 32. A further answer is found in the analogy of the decisions that a servant may be convicted of keeping and maintaining a nuisance of which he is not in possession, provided the master intrusts him with the management and control of the business for a short time in the master's absence. *Commonwealth* v. *Merriam*, 148 Mass. 425, 427. *Commonwealth* v. *Brady*, 147 Mass. 583, 584. *Commonwealth* v. *Churchill*, 136 Mass. 148, 151. Here again the word "keep" in the statute is construed as referring to authority to deal with the property, rather than to possession. There is no doubt that Wright had such authority, management, and control.                                        *Judgment to stand.*