UNITED STATES v. 1364.76875 WINE GALLONS, MORE OR LESS, OF SPIRITUOUS LIQUORS.

No. 2646.

District Court, E. D. Missouri, E. D.

April 28, 1945.

390

Harry C. Blanton, U. S. Dist. Atty., of Sikeston, Mo., and Arthur A. Hapke, Asst. U. S. Atty., of St. Louis, Mo., for libelant.

Louis B. Sher, of St. Louis, Mo., for Paramount Liquor Co., interpleader.

John C. Vogel, of St. Louis, Mo., for St. Louis Terminal Warehouse Co.

HULEN, District Judge.

This is a proceeding by libel in rem wherein the following spirituous liquors were seized: 4800 pints Westerfield Whiskey; 8399 half pints Westerfield Whiskey; 1199 fifths Rocking Chair Whiskey. The seizure was to enforce a forfeiture of the liquors alleged to have been incurred under the laws of the United States on the assumption that the liquors at the time and place of seizure were owned by one Austin Seib. The libel petition is in two counts. The first count alleges that at the time of the seizure Austin Seib was unlawfully carrying on the business of a wholesale liquor dealer at 111 Commercial Street in the town of Charleston, in Mississippi County, Missouri, without first having paid the special tax of such wholesale liquor dealer. Forfeiture is claimed under Section 3253, Title 26 U.S.C.A.Int. Rev.Code. Count Two alleges as a basis for the seizure, in addition to the charge contained in Count One, that Austin Seib failed to keep daily, at his place of business, a record of distilled spirits received and disposed of by him; failed to render correct transcripts or summaries of such records; and further that Austin Seib violated Section 203 of Title 27 U.S.C.A. by being without a basic permit to engage in the business of purchasing for resale at wholesale distilled spirits and did unlawfully purchase large quantities of distilled spirits and thereafter sell them at wholesale. Both counts of the libel petition allege the law violations by Austin Seib took place at the Commercial Street address in the town of Charleston. The distilled spirits in question were seized while in possession of the St. Louis Terminal Warehouse, No. 1, located at 1000 Spruce Street, St. Louis, Missouri.

The St. Louis Terminal Warehouse Company has filed an intervening petition alleging that it received the whiskey in question on the 13th day of December, 1943, for the account of Austin Seib, delivered its warehouse receipts therefor in the name of Austin Seib to the Paramount Liquor Company, St. Louis, Missouri. This intervener denies any violations of the Internal Revenue laws and it is the Court's understanding that none is charged against it by the plaintiff.

A further bill of interpleader is filed by the Paramount Liquor Company. The pleading of the liquor company is to the effect that at the time of the seizure it was the owner of the liquor and held the warehouse receipts therefor.

There is little or no dispute as to the facts of this case. On December 10, 1943, Austin Seib went to the place of business of the Paramount Liquor Company and purchased the liquor afterward seized. He was unable to pay for it, and Paramount Liquor Company would not give him credit for the purchase price of some $13,000. It was then agreed between Paramount Liquor Company and Austin Seib that the whiskey would be delivered to the St. Louis Terminal Warehouse Company and warehouse receipts obtained therefor and that Paramount Liquor Company would retain the warehouse receipts until Austin Seib paid them for the whiskey. For the purpose of handling the transaction, should Austin Seib be unable to pay for and take out all the whiskey at one time, nineteen warehouse receipts were issued each for twenty-five cases of whiskey. The seized liquor comprised 475 cases. Pursuant to the agreement between Paramount Liquor Company and Austin Seib, the Paramount Liquor Company, on or about the 10th day of December, 1943, delivered the 475 cases of whiskey to the St. Louis Terminal Warehouse Company at its warehouse No. 1, located at 1000 Spruce Street, St. Louis, Missouri, and on or about December 13, 1943, the St. Louis Terminal Warehouse Company issued its negotiable warehouse receipts Nos. 330 to 348, in the name of Austin Seib. These receipts were mailed by the warehouse company to the Paramount Liquor Company and received by them, and have been in possession of the Paramount Liquor Company ever since.

Austin Seib has paid nothing on account for the 475 cases of whiskey.

The whiskey was insured in the name of Austin Seib. Warehouse storage charges were paid by Austin Seib. Paramount Liquor Company, on the 10th day of December, 1943, made out an invoice showing the liquor "Sold to" Austin Seib. Records of Paramount Liquor Company show they paid an agent's commission for sale of the liquor to Austin Seib. On Form 52B of the Internal Revenue Department, filed by the Paramount Liquor Company, showing sales for December, 1943, a record was made of the sale of the 475 cases of whiskey to Austin Seib. Austin Seib made a floor tax return on April 1, 1944, of the 475 cases of whiskey. The Paramount Liquor Company made two floor tax returns as of April, 1944, one apparently for their regular stock of whiskey, and the other a "supplemental" return, referring to the 475 cases of whiskey in storage with the St. Louis Terminal Warehouse Company. The whiskey was seized on the 11th day of January, 1944.

At the time of the seizure Austin Seib was violating the Internal Revenue laws in the conduct of his regular business at 111 Commercial Street in the town of Charleston, Mississippi County, in the particulars charged. Undisputed evidence of such violations, including conviction, was offered in the hearing of these proceedings. The question before the Court is not as to the guilt of Austin Seib as alleged in the libel petition, but as to the ownership of the seized whiskey at the time of the seizure and the effect of the outstanding warehouse receipts on the right of the plaintiff to forfeit the liquor as the property of Austin Seib.

Plaintiffs are proceeding under Section 3253, Title 26 U.S.C.A.Int.Rev.Code. This section provides for forfeiture (1) of "all distilled spirits * * * owned by such person, wherever found, and (2) all distilled spirits * * * found in the distillery or rectifying establishment * * * shall be forfeited to the United States." We are here concerned only with the first provision of the forfeiture statute. This statute refers to spirits which are owned by the wrongdoer at the time found or seized.

Under the evidence, there was a sale of the 475 cases of whiskey by Paramount Liquor Company to Austin Seib. Whether delivery by the St. Louis Terminal Warehouse Company of unendorsed warehouse receipts covering the 475 cases of liquor to the Paramount Liquor Company transferred legal title back to the Paramount Liquor Company for security purposes is not necessary to decide under the view we take of the law. There are authorities both ways. Hale v. Milwaukee Dock Company, 29 Wis. 482, 9 Am.Rep. 603; Easton v. Hodges, 7 Cir., 18 F. 677.

A case not unlike the one at bar is Pattison v. Dale, 6 Cir., 196 F. 5. In that case Pattison claimed that possession of warehouse receipts created an equitable lien in his favor with regard to certain whiskey in storage. In sustaining this position, the court said, 196 F. loc.cit. 14, "We are constrained to hold that, as between Rohrer and Pattison (pledgor and pledgee, respectively), the effect of the delivery of the warehouse documents was to invest Pattison with constructive possession of the barrels of whisky described in the receipts. The warehouse documents contain the substantial elements of well-understood warehouse receipts, and no question is made as to their form. It is clear that Rohrer intended to deliver, and Pattison understood he was to acquire, constructive possession of the barrels of whisky. This mutual purpose ought to be carried out if it can be. * * * We conclude on this record that the action of Rohrer was an appropriation of these barrels of whisky to the purpose of securing Pattison and Pattison alone in respect of moneys then advanced by him. It results that if we are in error in our belief that constructive possession was given, *at least an equitable lien on the whisky was created.*" (Emphasis added.)

There has been no insinuation in this case that the sale of the whiskey by Paramount Liquor Company to Seib and placing the whiskey in the St. Louis Terminal Warehouse was a sham or sale in fraud of the law. No question is raised as to the form of the warehouse receipts. Under the evidence we find that it was a bona fide transaction. Such procedure is not unusual. Seib has never paid a penny of the purchase price of the liquor seized. He is the wrongdoer. There is no charge that the Paramount Liquor Company was guilty of any violation of the law or had knowledge that Seib was engaged in violating the law in operating a liquor business in Charleston, Missouri. Under these circumstances, to sustain the forfeiture would

result in penalizing only the Paramount Liquor Company, an innocent party, and not Austin Seib, the guilty party, and this notwithstanding the property seized was in no way used in connection with a law violation. Austin Seib had never had actual possession of the property, and at the time of the seizure he was not in a position to obtain possession or control of the property. To hold that the property, under the circumstances, was subject to seizure because of the violation of law by Austin Seib would be harsh and oppressive, restrictive of commerce, and foreign to this Court's idea of justice. We do not believe that the statute under which the Government is proceeding is subject to such an interpretation. It is a penal statute. It must be, therefore, strictly construed, and all doubt resolved in favor of those against whom it is invoked. See Shawnee National Bank v. United States, 8 Cir., 249 F. 583, loc.cit. 586.

We do not think the lien of the Paramount Liquor Company in the seized property fails because the warehouse receipts were made out in the name of Austin Seib and had never by him been endorsed. See 67 C.J. page 474, Section 53 and cases there cited. See also St. Louis National Bank v. Ross, 9 Mo.App. 399; loc.cit. 411, Millhiser Mfg. Co. v. Gallego Mills Co., 101 Va. 579, 44 S.E. 760, and Bush v. Export Storage Company, 6 Cir., 136 F. 918. They were held by the Paramount Liquor Company as collateral security for the amount due it on the sale of the liquor to Seib. Counsel for the Government, in arguing this case, conceded that Paramount Liquor Company held the warehouse receipts to protect it "in collecting the money due it."

 A lien has been defined as "'a claim which one person has upon the property of another as security for some debt or charge, a tie that binds property to a debt or claim for its satisfaction.' * * * 'In fact if a transaction resolve itself into a security, whatever may be its form, and whatever name the parties may choose to give it, it is in equity a lien.' * * * An equitable 'lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation, or is implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings.'" See

Baranofsky v. Weiss, 1935, 120 Pa.Super. 126, 182 A. 47, 48. The arrangement between Seib, Paramount Liquor Company, and the St. Louis Terminal Warehouse Company created a lien on the seized property in favor of the Paramount Liquor Company to the amount of the unpaid purchase price. For cases sustaining the rights of a lienholder under circumstances such as the case now before the Court, see United States v. Three Hundred and Seventy Two Pipes Distilled Spirits, Fed. Cas.No.16,505; Shawnee National Bank v. United States, 8 Cir., supra; United States v. 396 Barrels Distilled Spirits, Fed. Cas.No.16,504; United States v. Stowell, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555; Glenn v. Winstead, 116 N.C. 451, 21 S.E. 393; United States v. Two Barrels of Whiskey, 4 Cir., 96 F. 479.

We are unable to find any authorities to support the Government's claim in this case. There are cases where forfeiture has been decreed even though the property seized belonged to an innocent party or was encumbered by a lien held by one who was guilty of no wrongdoing and was without knowledge of the law violation, but it will be found in cases where forfeiture is upheld under such circumstances that a further element is involved such as the property seized being at the time of seizure actually used in the violation (See Osborne v. State, 77 Ark. 439, 92 S.W. 406) or where the owner places the wrongdoer in possession of the property. Commissioner v. Intoxicating Liquors, 163 Mass. 42, 39 N.E. 348. In many cases the controlling principle is, the proceeding being in rem, the liquor or other property seized is the offender so to speak—the property is contraband, and the property is subject to seizure and destruction when it is being used contrary to the law, regardless of ownership.

 Having reached the conclusion that the interest of the Paramount Liquor Company in the seized whiskey, by virtue of its holding negotiable warehouse receipts therefor, creates a lien on the property in the nature of a mortgage and that it at least had a security interest in the property at the time of its seizure, it is our opinion that the bill of interpleader of the Paramount Liquor Company should be sustained, and the liquor delivered to it on surrender of the warehouse receipts to the St. Louis Terminal Warehouse Company, and in all respects complying with the

terms of the warehouse receipt agreement. We do not deem it necessary to pass here on liability for floor taxes which may be unpaid on the whiskey. That is a matter for settlement, for amount due, between the Government and intervener.

Findings of fact, conclusions of law, and decree in accordance herewith will be submitted.