THE PEOPLES BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97143. Promulgated February 13, 1941.

*H. H. Hunt*, *C. P. A.*, for the petitioner.
*John R. Stivers*, *Esq.*, for the respondent.

**OPINION.**

ARUNDELL: The petitioner contests the whole of the deficiencies asserted here on the basis of section 3798 of the Internal Revenue Code, which is set out in the margin.[1] The portion of the section claimed to be applicable is to be found in subsection (b) and provides that when depositors of a bank have released it from a portion of its deposit liability, accepting in lieu thereof a lien on its future earnings, no tax shall be assessed or collected by the United States which shall diminish the assets available and necessary to the full payment of such claims. The statute invoked, however, can have no application in the instant case. The release of the petitioner from liability for 50 percent of the deposits, given by the depositors in their agreement with the peti-

---

[1] SEC. 3798. EXEMPTION OF INSOLVENT BANKS FROM TAX.

(a) Whenever and after any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has ceased to do business by reason of insolvency or bankruptcy, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, which shall diminish the assets thereof necessary for the full payment of all its depositors; and such tax shall be abated from such national banks as are found by the Comptroller of Currency to be insolvent; and the Commissioner of Internal Revenue, when the facts shall appear to him, is authorized to remit so much of the said tax against any such insolvent banks or trust companies organized under State law as shall be found to affect the claims of their depositors.

(b) Whenever any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has been released or discharged from its liability to its depositors for any part of their claims against it, and such depositors have accepted, in lieu thereof, a lien upon subsequent earnings of such bank or trust company, or claims against assets segregated by such bank or trust company or against assets transferred from it to an individual or corporate trustee or agent, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, such individual or corporate trustee or such agent, which shall diminish the assets thereof which are available for the payment of such depositor claims and which are necessary for the full payment thereof.

\*       \*       \*       \*       \*       \*       \*

tioner, was unconditional. Moreover, by express provision of that agreement, the contract entered into by the stockholders and the depositors, looking to reimbursement for the canceled deposits before the stockholders claimed any dividends, is not binding on the petitioner. In these circumstances, no lien on petitioner's future earnings may be said to exist in any legally recognizable form.

The agreement of petitioner's stockholders, standing alone, does not lend support to petitioner's argument. There is an indication, it is true, in that agreement that the future earnings of the bank were the contemplated source from which the depositors should be reimbursed for their canceled deposits, and, where such an indication is present in certain situations, the courts have created equitable liens under principles stated in *Walker* v. *Brown*, 165 U. S. 654, 664:

> The doctrine may be stated in its most general form that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees and purchasers or encumbrancers with notice.

See also *United States* v. *Butterworth-Judson Corporation*, 267 U. S. 387; *Ingersoll* v. *Coram*, 211 U. S. 335, 368.

The present facts do not present a situation appropriate for the application of this doctrine. The contracting parties, the stockholders, are without power to bind the bank's future earnings, which become petitioner's property as they arise and remain so until the declaration of dividends. *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330; *In re Sutherland*, 23 Fed. (2d) 595, 599; *Central of Georgia Railway Co.* v. *Central Trust Co. of New York*, 135 Ga. 472; 69 S. E. 708.

In the absence of an indication on the part of Congress to use the term "lien" here in some special sense, see Revenue Act of 1938, Conference Committee Report, 75th Cong., 3d sess., H. R. 2330, it must be taken as used in the customary legal sense in which we have considered it. It thus can have no application to the facts present here and the petitioner's claim under section 3798 of the Internal Revenue Code for immunity from the deficiencies for all the years here involved must be denied.

There remains for disposal the question of whether petitioner is entitled for the year 1936 to deduct, as ordinary and necessary business expense, the sum of $15,897.64 paid to the petitioner's depositors in partial liquidation of their released deposits. The respondent contends that the petitioner did not pay the sum sought to be deducted, but that such amount was paid by its stockholders.

The stipulation of the parties entered herein states plainly that the petitioner's stockholders paid the $15,897.64 for which the deduction is sought, and a sample of the check used in making the payments is offered in substantiation. If we stop here, in the absence of further proof as to the source from which the stockholders derived these funds, the petitioner may not have the deduction, since the payments were made by another. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435; *Morris Plan Co. of Binghamton*, 26 B. T. A. 772; see section 23 (a) of the Revenue Acts of 1934 and 1936.

It may be assumed that the petitioner furnished the funds for the payments to the depositors; however, the way to the allowance of the deduction is still not clear, since the payment of these funds by petitioner to its stockholders did not in itself constitute payment of the old deposit liabilities but was rather a distribution to petitioner's stockholders of its earnings and was therefore in the nature of a dividend for which no deduction may be allowed. The present situation does not, so far as we are shown, differ greatly from that presented in *Morris Plan Co. of Binghamton*, *supra*, where the taxpayer had been saved from insolvency through advances made to it under a contract by which its stockholders deposited their stock with trustees who were to hold such stock and collect dividends thereon and out of these dividends were to pay off the advances. The taxpayer claimed as a deduction certain amounts paid by it to the trustees and used by them to discharge interest due on the advances. It was held that petitioner's action did not constitute the payment of interest but merely the distribution of a dividend, for which no deduction may be allowed. So far as the facts in the instant case have been disclosed, they bear close similarity to those in the case cited; in both instances the agreements relative to the payment of the obligations were made not in the name of the taxpayer, but in the names of their stockholders; in neither case did the taxpayer appear as a party to the agreement or assume any obligation thereunder; in both cases the role of the taxpayer was merely to distribute its earnings to its stockholders, without participation in the use to which they were thereafter put. Although in the instant case it does not appear how the amounts in question were distributed to the stockholders, in the absence of evidence on this point it must be assumed that distribution was made through the declaration of a dividend. The similarity between the two cases is thus further confirmed.

In these circumstances it must be held that petitioner is not entitled to the deduction which it claims.

*Decision will be entered for respondent.*