THE PARTICIPATION HOLDING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110245. Promulgated March 30, 1943.

*Richard C. Schaefer, Esq.*, for the petitioner.
*W. W. Kerr, Esq.*, for the respondent.

OPINION.

Disney, *Judge:* The petitioner, in asking for exemption from collection of tax under section 818 of the Revenue Act of 1938, as amended by section 406 of the Revenue Act of 1939,[1] of course has the burden of showing itself to be strictly within the statute. *Cornell* v. *Coyne,* 192 U. S. 418; *Producers' Creamery Co.* v. *United States,* 55 Fed. (2d) 104; *Jockey Club,* 30 B. T. A. 670; affd., 76 Fed. (2d) 597. Under the gist of the statute governing here, it must demonstrate, in order to secure the exemption, that the depositors had accepted, in lieu of deposits, claims against assets, segregated in the hands of an agent, and

---

[1] SEC. 818. TAXES OF INSOLVENT BANKS.

Section 22 of the Act of March 1, 1879 (20 Stat. 351; 12 U. S. C. 570), is amended to read as follows:

\*     \*     \*     \*     \*     \*     \*

(b) Whenever any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has been released or discharged from its liability to its depositors for any part of their claims against it, and such depositors have accepted, in lieu thereof, a lien upon subsequent earnings of such bank or trust company, or claims against assets segregated by such bank or trust company or against assets transferred from it to an individual or corporate trustee or agent, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, such individual or corporate trustee or such agent, which shall diminish the assets thereof which are available for the payment of such depositor claims and which are necessary for the full payment thereof.

(c) Any such tax so collected shall be deemed to be erroneously collected, and shall be refunded subject to all provisions and limitations of law, so far as applicable, relating to the refunding of taxes, but tax so abated or refunded after the date of the enactment of the Revenue Act of 1938 shall be reassessed whenever it shall appear that payment of the tax will not diminish the assets as aforesaid. The running of the statute of limitations on the making of assessment and collection shall be suspended during, and for ninety days beyond, the period for which, pursuant to this section, assessment or collection may not be made, and a tax which has been abated may be reassessed and collected during the time within which, had there been no abatement, collection might have been made.

\*     \*     \*     \*     \*     \*     \*

SEC. 406. INSOLVENT BANKS.

\*     \*     \*     \*     \*     \*     \*

(b) The term "agent" as used in 3798 (b) of the Internal Revenue Code shall be deemed to include a corporation acting as a liquidating agent.

(c) The amendments made by this section shall be effective as of the date of enactment of the Revenue Act of 1938.

that such assets were available for payment of claims of depositors in the bank and necessary for the full payment thereof, and would be diminished by the imposition upon it as such agent of the tax here involved.  Upon brief, the petitioner says:

Petitioner, standing by itself, might not be entitled to the immunity afforded by the statute since its primary creditors were holders of mortgage trust certificate issued by the Bank and were not depositors of the Bank.

The petitioner argues, however, that because of the interlocking relationship of petitioner and Fulton, created by the plan for reorganization of the bank, the immunity statute applies; because any residue left to Participation after discharge of its debentures would belong to Fulton and be subject to payment of its debentures held by the old depositors; further, that a tax on a wholly owned subsidiary of an insolvent bank is a tax on the bank, that there will be a residue of assets in the hands of petitioner for payment over to Fulton, and that the depositors of the bank will not be paid in full.

We have no hesitancy in holding that Participation comes within the definition of agent, as set forth in the amendment, section 406 (b), Revenue Act of 1939.  The situation in this respect is the same as in *Valuation Service Co.*, 41 B. T. A. 811, in that the petitioner is owned by a corporation owned in turn by an insolvent bank.  We there upheld the exemption.

After a detailed examination and consideration of the various instruments executed in pursuance of the plan, and particularly of the plan of reorganization itself, we come to the conclusion that the petitioner should be sustained in its view that any residue left in its hands after the discharge of the 5 percent registered participating debentures which it had issued, inured to the benefit of Fulton and to the benefit of those depositors who held Fulton's 2 percent debenture notes in lieu of 70 percent of the deposits, and that therefore the depositors had a claim against assets transferred to Participation.  That Fulton would get the benefit of any funds which might remain to Participation from the assets transferred to it to secure its debentures, after the discharge of its obligation of the holders of participating debentures, is inescapable since not only did Fulton have a contract to that effect, that is that it would receive such residuum as consideration for services rendered, but that in any event, by virtue of Fulton's ownership of all the stock of Participation, the same result would accrue to Fulton.  It is equally clear, we think, that any such residue, so coming to the hands of Fulton, was subject to the payment of Fulton's 2 percent debenture notes, for the plan particularly provides that any cash realized by Fulton from its property and assets, whether by way of principal or income, and dividends received on the stock of the bank, might be applied, after certain other payments to be made, to the payment of the debenture

notes. Moreover, although the bank held all the stock of Fulton, the stock of the bank in turn was in escrow with Fulton, and any dividends upon the bank's stock (and the stock itself, in case of default on the notes at the end of seven years) were in turn to be applied to the payment of Fulton's debenture notes. Thus it appears that any residuum received by Fulton from Participation could not inure to the benefit of its stockholders or to the benefit of the stockholders of the bank, the owner of Fulton's stock, but must find its way into the payments to be made upon Fulton's 2 percent debenture notes, since these were held by the former depositors as a substitute for 70 percent of the old deposits. It is therefore plain that any residuum accruing to Participation after discharge of its own participating debentures was subjected to the payment of Fulton's debenture notes to the depositors. That the other creditors of Fulton might also participate in the benefit, is immaterial. The Treasury takes that view: "The section is not for the relief of creditors other than depositors though it may incidentally operate for their benefit." T.D. 4958, 1941 C. B., p. 74. The view is obviously sound, since nothing in the act indicates that there is any exception to its general language merely because creditors other than depositors might participate in the benefit of immunity.

Although it is true, as the respondent argues, that neither Fulton's 2 percent debenture note issue, nor Participation's 5 percent registered participating debenture issue had any lien on, or charge upon, the assets of the other; that is not the complete answer to our question. For, if, regardless of whether Participation's debenture holders had any lien or charge against Fulton or its assets securing its debenture notes, Participation should, in fact, have a residue left, after discharging its debentures, to which residue Fulton had a right, the question then simply is: Is any such fund, in Fulton's hands, subject to be used to discharge the obligation of Fulton to the former depositors? We think, for the reasons above set forth that it clearly is, and that the "depositors have accepted * * * claims against assets * * * transferred * * * to a corporate trustee or agent" in the language of section 818. *Peoples Bank*, 43 B. T. A. 589, is not in point because therein no assets were segregated for the benefit of depositors, and they had no lien on future earnings of the bank, having accepted merely contractual rights against the bank's stockholders.

Any assets of Participation must also, under the statute, be necessary for full payment of the depositors, and that question we must now decide. It presents no difficulty. Since the evidence shows that the parties are in agreement that Fulton's 2 percent debenture notes were worth only about 50 percent of face value, it is apparent that full payment of the 70 percent of the deposits, coming necessarily

from the payment of the 2 percent debenture notes issued by Fulton, would require any funds of Fulton coming from other sources, including the residuum in Participation's hands, and that such residuum, therefore, would be "necessary for the full payment" of the 70 percent depositors.

We must decide, therefore, in the final analysis,, whether the facts of record herein show that there was in fact in petitioner's hands any such residuum. If such assets appear, it follows that payment of the tax by petitioner would diminish such assets. The respondent contends that the evidence is that no residue will be due Fulton, but on the contrary the holders of Participation's participating debentures will not be paid in full. Those participating debentures were issued to holders of mortgage trust certificates, not to any depositors of the old bank as such. The respondent likens the situation to one involving devises of residuary estate to charity, where, though charities are favorites of the law, exemption is denied where it is uncertain whether there will be any residuary estate for charity. *Humes* v. *United States*, 276 U. S. 487; *Old Colony Trust Co.* v. *Commissioner*, 87 Fed. (2d) 131. We think the case presents analogy to the situation here. The petitioner does not deny the element of uncertainty, but urges that there was in fact some residue left to petitioner. It is worthy of emphasis that the statute applies only if here are "assets * * * available." Although Participation, in originally making its application for immunity and its protest, indicated at that time, particularly on or about May 11, 1940, that it was anticipated that there would be no residuum to Participation, but a deficiency to the extent of $53,093.69, petitioner, now, referring to a statement of its assets and liabilities,, contends that calculated upon book values, upon September 30, 1942, petitioner had total assets of $40,405.13 as against liabilities which it actually had to pay of only $24,342.36 interest on the debentures and $3.21 real estate taxes, and that therefore at that time (a few days before the trial of this matter) there was, in fact, a considerable residuum in petitioner's hands; and that even on actual values, there was a small residue of $2,816.77. The respondent points out that the assets listed and so considered by the petitioner were not worth book value, and that the total assets were not more than $27,162.34, leaving against liabilities of $40,405.13 a deficit, instead of a residue, in Participation's hands.

We agree with the petitioner's contention that for this purpose of ascertaining the residuum involved, liabilities shown upon petitioner's books for capital stock, Federal taxes, depreciation and profit and loss should not be considered (for these items would not actually decrease petitioner's residue from its assets. The item of tax would be payable only if immunity is here denied.) However, in addition

to the item of $24,342.36 for debenture interest and $3.21 for real estate taxes, shown as liabilities, there also appears $5,880.91 "Contingencies." · This item is wholly unexplained, and therefore can not be disregarded by us. The expression indicates that, to say the least, the amount might have to be paid, so that an equal amount of assets is not free. We find the petitioner's liabilities to be $30,226.48 and, using what we find to be a fair value of $23,000 for its real estate and $1,807.79 for its Fulton 2 percent debentures, find assets of $25,162.34—on September 30, 1942. This leaves a deficit of $5,064.14 upon that date, approximately the same date as the trial herein. No showing was made as to the actual condition in the taxable year. The petitioner concedes that there will be some further depreciation in assets as liquidation progresses. Though there is also further general evidence to the effect that a residue would remain after all liabilities were paid, such evidence comprises mere estimates of the same nature as rejected by us on this question in *West Town State Bank*, 32 B. T. A. 531, and can not be considered of weight here.

In *Alpena Savings Bank*, 45 B. T. A. 665, we considered a situation similar to that herein involved and, in arriving at a conclusion, we considered the assets as valued up to the time of hearing, both book value and actual value being placed in evidence. In our opinion, upon all of the evidence, it is entirely too uncertain as to whether Participation will at any time have any assets available to pay depositors for us to approve immunity in the taxable year here at hand. Although the petitioner urges that the immunity is conditional only (and the Congressional Committee Reports upon the statute during its passage show that such was the intention), and that the tax can be reassessed whenever it appears that the assets are not necessary for payment of depositors, nevertheless, we think that in order to secure immunity in a particular year under the statute at hand, the taxpayer must affirmatively show assets available and that they are necessary for payment to depositors; and that only in such year can the taxpayer secure immunity. It is true that the statute of limitations is left open for reassessment by the collector, in case immunity is granted, but we do not think that such fact justifies immunity from tax in any year in which it does not appear that there were then any assets available subject to payment of depositors. The situation here is peculiar. There may or may not be a residue of assets in the hands of Participation, when the retirement of its debentures is complete; and if there is none, obviously Participation should have benefit of no immunity. In our opinion, the immunity should not be granted in a previous year, when, under all of the evidence adduced it appears that there were no assets in the hands of the taxpayer before us which could constitute

basis upon which this taxpayer could be brought under the revenue act relative to insolvent banks and immunity, and no showing is made that such assets would exist when the liquidation is closed. We therefore hold that the Commissioner did not err in denying immunity from collection to the petitioner.

*Decision will be entered for the respondent.*