Farmers & Merchants Bank v. Commissioner.
Farmers & Merchants Bank v. Commissioner
Docket No. 11668.
United States Tax Court
1948 Tax Ct. Memo LEXIS 232; 7 T.C.M. (CCH) 145; T.C.M. (RIA) 48037; March 19, 1948
*232 Petitioner, a banking institution, closed its doors December 20, 1931 and, in order to make possible its reopening and continued operation as a going bank, it was agreed by petitioner and each of its depositors and each of the stockholders in the continuing bank that all of the depositors in the bank when closed relinquish and cancel 75 per cent of their respective deposits, and that the amount of these waived and canceled deposits would be paid by such stockholders from any dividends declared and paid upon their stock in the continuing bank, with certain conditions. During the respective taxable years 1941 and 1942 certain amounts of dividends were declared by the continuing bank and paid by its shareholders to its depositors in reduction of their waived and canceled deposit claims pursuant to such agreement. Held, petitioner is not immune from income tax under section 3798 (b) of the Internal Revenue Code. Howard V. Kanouff, Esq., and Philip G. Johnson, C.P.A., 1223 Sharp Bldg., Lincoln, Neb., for the petitioner. Frank M. Cavanaugh, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has *233 determined deficiencies in income tax for the years 1941 and 1942 in the amounts of $989.62 and $1,223.67, respectively. The issue is whether petitioner is exempt from Federal income tax by reason of the provisions of section 3798 (b) of the Internal Revenue Code. Findings of Fact Petitioner is a Nebraska corporation with its principal office at Ceresco, Nebraska. Its returns for the years in question were filed with the collector of internal revenue for the district of Nebraska. It was organized on September 1, 1911, and has operated continuously since that date as a bank, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, except for the period December 20, 1931 to September 30, 1932, during which time it was closed and in process of reorganization. At the close of business on December 19, 1931, the bank, because of the deflation in values and due to the adverse conditions affecting the community in which it carried on its business, and due to a slow and continuous withdrawal of deposits, found it unwise to continue to permit such withdrawals. In order to permit the bank to continue to operate *234 as a going bank a reorganization plan was adopted, with the approval of the Department of Trade and Commerce, State of Nebraska. The reorganization plan adopted was embodied in an agreement which was signed by petitioner, each depositor, and each stockholder. The said reorganization agreement prescribed in part as follows: "1. That each depositor in said bank hereby agrees to waive 75 per cent of his deposit, whether checking, savings or certificate of deposit and relinquish same to the Farmers & Merchants Bank, Ceresco, Nebraska, and thereby reduce his claim against said bank to that extent, upon the condition, however, that the stockholders of said Farmers & Merchants Bank agree, and we, the undersigned stockholders of the reorganized Farmers & Merchants Bank, Ceresco, Nebraska, do hereby agree that out of the dividends declared upon our stock, the said 75 per cent so relinquished shall be paid to the depositors, before the stockholders so agreeing, receive any dividends upon their stock; said 75 per cent so relinquished is to be in no way a charge against the Farmers & Merchants Bank or a liability thereof, but it is to be repaid only from the dividends on the stock above described *235 when said dividends are declared and said dividends shall be declared when the consent therefor is obtained from the Department of Trade and Commerce, State of Nebraska; that the remaining 25 per cent of said deposit shall be paid to the depositor as follows, to wit: No depositor shall withdraw or be permitted to withdraw more than 10 per cent within the first thirty days after the bank reopens, nor in any one calendar month beginning thirty days after date of reopening of said bank more than one per cent of his deposit in said bank as such deposit exists and is shown in the records of said bank at the close of business on December 19th, 1931, less any amount placed in the new capital structure of said bank by said depositor." As a result of said reorganization agreement, petitioner reopened for business on October 1, 1932, and depositors' claims in the amount of $127,098.31 were discharged. All dividends which were declared since petitioner's reorganization in 1932 have been received by the waiving and relinquishing depositors pursuant to the reorganization agreement. On December 31, 1941, unpaid depositors' claims aggregated $67,628.68; and on December 31, 1942, said claims *236 aggregated $59,115.28. Petitioner, pursuant to the reorganization agreement and a further directive from the Department of Banking, State of Nebraska, made no reimbursement to waiving depositors but distributed its earnings as a dividend to stockholders. The latter transferred these dividends to the depositors pursuant to their agreement in reduction of their waived claim. The Department of Banking of the State of Nebraska gave authority for petitioner to reclassify its assets from time to time and to divide the proceeds between its surplus account and earnings available for dividends to stockholders. Petitioner by its unofficial minutes recorded by Fred Mostrom, cashier, declared from time to time dividends to its stockholders. The latter in turn paid to the waiving depositors such dividends as were received by them pursuant to their agreement with said depositors. Opinion Section 3798 (b) of the Internal Revenue Code provides: "(b) Whenever any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has been released or discharged from its liability to its depositors for *237 any part of their claims against it, and such depositors have accepted, in lieu thereof, a lien upon subsequent earnings of such bank or trust company, or claims against assets segregated by such bank or trust company or against assets transferred from it * * * no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, * * * which shall diminish the assets thereof which are available for the payment of such depositor claims and which are necessary for the full payment thereof." The question presented is answered by a determination as to whether or not, under the reorganization agreement set out in our findings, the depositors of petitioner accepted, in lieu of 75 per cent of their claims against petitioner, a lien upon the latter's subsequent earnings or upon assets segregated by it. Petitioner, in claiming exemption, of course, has the burden of showing itself to be strictly within the statute. Cornell v. Coyne, 192 U.S. 418; Producers' Creamery Co. v. United States, 55 Fed. (2d) 104. We do not think, under the facts here disclosed, that petitioner has shown itself entitled to tax *238 immunity. A reading of the reorganization agreement, which was signed by petitioner, by every depositor and every stockholder, shows clearly an express understanding that the depositors released petitioner from liability with respect to 75 per cent of the amount of their deposits and agreed to look to the stockholders exclusively and in their individual capacities for the payment of their claims out of dividends which might in the future be declared and paid such stockholders by petitioner. The petitioner's assets, including subsequent earnings, were released from all liability for payment of the waived portion of the deposits. The liability to pay these waived claims was one assumed by the stockholders and was effective only as against dividends, if and when paid them in the future. Under the conditions set out, it is quite apparent that the normal operation of petitioner's banking business was secured and it was enabled to go forward in the transaction of a banking business and that its earnings realized therefrom were subject to no lien in favor of depositors for the 75 per cent of their deposits which had been waived, but that petitioner was free to accumulate such earnings or *239 use them to pay subsequent creditors. It might refrain from paying dividends to its stockholders for a term of years and intentionally build up a large surplus which would not be available to the depositors to satisfy the waived portion of their deposits. The question here presented, under substantially similar circumstances, was passed upon by us in Peoples Bank, 43 B.T.A. 589. There we held that the depositors having entered into a contract with the stockholders of the bank to waive a portion of their deposit claims against the bank and look to the stockholders for payment out of dividends paid in the future upon the stock, the bank was not entitled to the immunity under the Code section here involved. We think petitioner is concluded by this decision. Decision will be entered for the respondent.