## CLINTON TRUST CO. v. UNITED STATES.

### No. 45514.

Court of Claims.

Dec. 6, 1943.

---

[1] No opinion for publication.

Frederick L. Pearce, of Washington, D. C. (Morris, Kix Miller & Baar, of Washington, D. C., on the brief), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff is a New Jersey trust company, a substantial portion of the business of which, during the period here in question, consisted of receiving deposits and making loans and discounts. Due to insolvency it closed on March 4, 1933, and remained closed until May 1934, at which time a plan of reorganization previously adopted by its Board of Directors was put into effect.

Under this plan the trust company, as reorganized, was to reopen for business,

and the former depositors were to be credited with deposits of 50% of their former deposits. As to the other 50%, the depositors released plaintiff from liability, accepting in exchange for the release (1) participating certificates in certain assets transferred to a corporate agent of plaintiff for liquidation, each depositor's certificate being for one-half of the released 50% of his deposit and (2) such number of shares of redeemable Class B 3% preferred stock in plaintiff company as reorganized, par value $25 per share, redeemable at $50 a share, as would make a par value of one-half of that one-fourth of the depositor's claim not covered by the other provisions described above. To illustrate, one having $200 on deposit when the bank closed received, in the reorganization a deposit of $100, a participation certificate in the liquidation of certain transferred assets for $50, and one $25 par value share of Class B preferred stock. Each $25 share had an actual market value of about $15 a share at the time these shares were given to the depositors. The reorganization plan called also for the amendment of plaintiff's corporate charter to provide, so far as here relevant, that one tenth of the net profits of the company should be placed in a surplus fund, that next the holders of the B preferred stock should be entitled to a cash dividend of 3% per annum, and that 40% of the remainder, if any, of such net profits

should be placed in the B preferred stock retirement fund. That stock was, as we have said, of a par value of $25 per share, and redeemable at $50 per share.

From July 1936, to December 31, 1940, the plaintiff had paid the 3% dividends on the preferred stock and had out of earnings placed some eleven thousand dollars in the B stock retirement fund. That money was, after the tax years here in question, on the suggestion of public banking authorities, transferred to other reserves and none of the B stock was redeemed.

The plaintiff filed federal capital stock tax returns for the years ending June 30, 1934, 1935, 1936 and 1937, and paid taxes accordingly. After the Revenue Act of 1938 was enacted, plaintiff filed claims for the refund of these taxes, on the ground that that Act authorized such claims, and on the ground that the capital stock tax was unconstitutional. With its return for the year ending June 30, 1938 plaintiff filed a claim for immunity from the tax for that year on the ground of the 1938 Act. Plaintiff relied then and now relies on Section 3798 of the Internal Revenue Code, which is Section 22(a) of the Act of March 1, 1879, as amended 26 U.S.C.A. Int.Rev. Code, § 3798. The text of the section (26 U.S.C.A., Int.Rev.Code, § 3798) is in the footnote.[1]

---

[1] § 3798. Exemption of insolvent banks from tax.

"(a) Whenever and after any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has ceased to do business by reason of insolvency or bankruptcy, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, which shall diminish the assets thereof necessary for the full payment of all its depositors; and such tax shall be abated from such national banks as are found by the Comptroller of the Currency to be insolvent; and the Commissioner of Internal Revenue, when the facts shall appear to him, is authorized to remit so much of the said tax against any such insolvent banks and trust companies organized under State law as shall be found to affect the claims of their depositors.

"(b) Whenever any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has been re-

leased or discharged from its liability to its depositors for any part of their claims against it, and such depositors have accepted, in lieu thereof, a lien upon subsequent earnings of such bank or trust company, or claims against assets segregated by such bank or trust company or against assets transferred from it to an individual or corporate trustee or agent, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, such individual or corporate trustee or such agent, which shall diminish the assets thereof which are available for the payment of such depositor claims and which are necessary for the full payment thereof.

"(c) (1) Any such tax collected, whether collected before, on, or after the date of enactment of the Revenue Act of 1938, shall be deemed to be erroneously collected, and shall be refunded subject to all provisions and limitations of law, so far as applicable, relating to the refunding of taxes.

"(2) Any tax, the assessment, collection, or payment of which is barred under subsection (a) of this section, or any such tax

The Commissioner of Internal Revenue wrote plaintiff on May 26, 1939, rejecting plaintiff's claimed ground of refund for the years 1934 to 1937 that the tax was unconstitutional, and further saying "Inasmuch as your claims for the refund of $600.00, $1,706.00, $600.00, and $559.00 paid for the years ended June 30, 1934 to June 30, 1937, inclusive, cover tax paid prior to May 28, 1938, the effective date of the amendment, the claims are also rejected on the ground that the bank is not entitled to the immunity claimed."

The letter requested further information about the plaintiff's claim for immunity for 1938. That information was furnished, and a request for a reconsideration of the refund claim for the prior years was made. On July 1, 1939, a Bureau letter was sent to plaintiff allowing plaintiff's claim for immunity for the year ending June 30, 1938, on the ground that the payment of the tax "would diminish the assets necessary for the full payment of the claims of the depositors."

On July 30, 1939, the plaintiff, in connection with the filing of its capital stock tax return for the year ended June 30, 1939, again filed a claim for immunity from the tax for that year. Further information was requested by the Bureau and was furnished. On December 20, 1939, the Commissioner wrote plaintiff that its claims for refund for the years 1934 to 1937 had been "rejected in Bureau letter of May 26, 1939, without consideration on their merits," and that those claims "are rejected in full"; that the claim for immunity for 1938 "is reopened and rejected", and that for 1939 "is also rejected" and that the taxes for those two years would be assessed. Plaintiff in 1940 paid the taxes for those years and for 1940, and sues here for the return of the taxes for all the years from 1934 to 1940.

The defendant urges that the plaintiff is, as to the taxes paid for the years 1934 to 1937, barred by the Statute of Limitations, Section 3772 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3772, which provides that suits may not be brought "after the expiration of two years from the date of mailing by registered mail by the Commissioner to the taxpayer of a notice of the disallowance of the part of the claim to which such suit or proceeding relates." It says that the Bureau letter of May 26, 1939, set the two-year limitation running, and that therefore this suit, filed July 18, 1941, came too late. Plaintiff claims that the statute did not begin to run until the Commissioner's letter of December 20, 1939, was mailed.

We think the defendant is right as to this point. The Commissioner's letter of May 26, 1939, placed the rejection upon an obviously untenable ground. It rejected the claims on the ground that the taxes had been paid before the effective date of the 1938 amendment, though the statute said in paragraph (c) (1) that "any such tax collected, whether collected before, on, or after the date of enactment of the Revenue Act of 1938, shall be deemed to be erroneously collected, and shall be refunded * * *." When the Commissioner sent this letter, plaintiff must have felt certain that it could obtain a reconsideration by the Commissioner and a more intelligent treatment of its claims. In this effort it succeeded, though the claims were ultimately rejected.

But paragraph (a) (3) of Section 3772 provides that "any consideration, reconsideration, or action by the Commissioner with respect to such claim following the mailing of a notice by registered mail of disallowance shall not operate to extend the period within which suit may be begun." What occurred here was that the Commis-

---

which has been abated or remitted after May 28, 1938, shall be assessed or reassessed whenever it shall appear that payment of the tax will not diminish the assets as aforesaid.

"(3) Any tax, the assessment, collection, or payment of which is barred under subsection (b) of this section or any such tax which has been refunded after May 28, 1938, shall be assessed or reassessed after full payment of such claims of depositors to the extent of the remaining assets segregated or transferred as described in subsection (b).

"(4) The running of the statute of limitations on the making of assessment and collection shall be suspended, during, and for ninety days beyond, the period for which, pursuant to this section, assessment or collection may not be made, and a tax may be reassessed as provided in paragraphs (2) and (3) of this subsection, and collected, during the time within which, had there been no abatement, collection might have been made.

"(d) This section shall not apply to any tax imposed by subchapter A or subchapter C of chapter 9."

sioner reconsidered the claims and placed their rejection upon a more tenable ground. But that did not toll the statute.

■ Plaintiff claims that the Commissioner here, by his May 26 letter, rejected only a part of the claim, and that his letter of December 20 rejected another part, and therefore the statute did not begin to run as to the latter part, until the December date, according to paragraph (a) (2). We think that the expression "part of the claim", in the statute, refers to a part of the money involved in the claim, and not to one or more but less than all the grounds of the claim. There would be no necessity for mention in the statute of a "part of the claim" in the sense in which plaintiff would have us understand it. If, for example, a taxpayer, in his claim for refund, set up three grounds or reasons why he should get his money back, and the Commissioner wrote him that he had considered grounds (1) and (2) and that, so far as they were concerned, the claim was disallowed, that would not be the "disallowance" of the claim which would set the statute running. It would rather be a statement that the Commissioner had not yet completed his consideration of the claim. If he later disallowed the claim on the third ground also, that would not be a disallowance of a part of the claim, but the first disallowance of the whole claim. The statute would run from that time.

■ In the instant case the Commissioner did not, in his May 26 letter, reserve any question for further consideration and thus prevent that letter from being a "disallowance". He merely gave a bad reason for his disallowance. Later he reconsidered and gave a better reason, but his reconsideration could not, under the statute extend the period of limitation. We therefore reach the merits of the case only as to the years 1938, 1939, and 1940.

■ On the merits of the claims for those years, we think the plaintiff is not entitled to recover. We recognize that the policy of the statute on which plaintiff bases its claim is that the United States does not, as a tax gatherer, desire to compete with the disappointed depositors of an insolvent bank, and that it is willing to defer the collection of its taxes in order to make available to such depositors money which, by certain arrangements with the other persons interested in the bank, has

been set aside for the depositors. This Court said many years ago in Johnston v. United States, 17 Ct.Cl. 157, 171, that this remedial statute should be construed liberally and we agree. We have already quoted the statute. Turning to paragraph (b) of Section 3798 we find that plaintiff's depositors did discharge plaintiff from its liability to them. The questions then are (1) did the depositors accept, in lieu of that liability, a "lien" upon subsequent earnings of plaintiff and (2) if so, did the collection of the taxes here in question "diminish the assets" which were "available for the payment of such depositor claims and which are [were] necessary for the full payment thereof."

■ We think that the plan of reorganization agreed to by the depositors and the stockholders under which the stockholders other than the depositor holders of the Class B preferred stock agreed to forego any rights which they might otherwise have had to share in certain of the net earnings of the corporation, gave the holders of the B stock a "lien" upon those earnings within the meaning of the statute. The statute speaks of a "lien upon subsequent earnings." It is hard to see how Congress could have meant by this expression anything more than a preferential right in such earnings, made superior, by the reorganization agreement, to rights which other persons would have had but for the agreement. Congress cannot have intended a "lien" in the sense of a security interest in existing property or in existing rights against third persons, as there could hardly be a lien in that sense upon subsequent earnings.

■ As to the second question, we think that plaintiff has not shown that the collection of the capital stock taxes did diminish the plaintiff's assets which would otherwise have been available for the payment of the depositors. The arrangement was, as we have seen, that for $50 of his former $200 deposit, to revert to the illustration used above, a depositor received one share of Class B preferred stock, par value $25, market value $15, redemption value $50, and a right that 40% of 90% of the net earnings should be placed in the redemption fund. The statute does not permanently forswear the collection of taxes for the benefit of depositors of an insolvent bank. It only defers their collection to the extent to which the tax money goes

to pay the depositors. The bank and its owners are not intended to gain or the Government to lose taxes as a result of the application of the statute. 26 U.S.C.A. Int. Rev.Code, § 3772(c) (3). The taxes are therefore collectible, and collectible immediately, out of any part of the earnings of the bank which, if not paid out for taxes, would still not be paid to the depositors. Here the 10% first taken out of earnings and placed in a reserve would be in that category, as would also be the 60% of the remaining 90% of earnings left after the other 40% of that 90% had been placed in the redemption fund for the depositors' Class B preferred stock. Whether the reorganization agreement contemplated, as it probably did, that the "net earnings" upon which these percentages should be based were after taxes, or not, plaintiff has not shown to what extent the payment of the taxes diverted money which would otherwise have gone into the depositors' fund. If the tax is made entirely uncollectible, for the time being, as plaintiff claims, because some unproved part of the uncollected tax will go for the benefit of the depositors, it is apparent, upon the percentages present here that owners other than the depositors are, temporarily, benefiting more from the application of the statute than the depositors are. Congress could not have intended that.

We conclude, therefore, that plaintiff is not entitled to recover, and that its petition should be dismissed. It is so ordered.

WHALEY, C. J., and WHITAKER and LITTLETON, JJ., concur.

JONES, J., took no part in the decision of this case.