**FARMERS & MERCHANTS BANK, CE-
RESCO, NEBRASKA v. COMMISSION-
ER OF INTERNAL REVENUE.**

No. 13792.

United States Court of Appeals
Eighth Circuit.

July 14, 1949.

Howard V. Kanouff, Wahoo, Neb. (Joseph H. McGroarty, Omaha, Neb., on the brief), for petitioner.

S. Walter Shine, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., George A. Stinson, Ellis N. Slack, and A. F. Prescott, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SANBORN, THOMAS and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The Commissioner of Internal Revenue assessed income taxes against Farmers and Merchants Bank, of Ceresco, Nebraska, upon its earnings, which the bank had been paying out to its former depositors, under the terms of a reorganization agreement entered into in 1932, for application upon the claims which the depositors had had against the bank when it closed its doors in 1931. The bank contended that the obligation which the reorganization agreement imposed upon it thus to distribute its available earnings, and the equitable hold which the former depositors had upon such earnings, in case it failed to do so, made the earnings exempt, under section 3798(b) of the Internal Revenue Code, 26 U.S.C.A. § 3798(b), from the payment of income taxes.

The Tax Court sustained the assessments made by the Commissioner, and the case is here on the bank's petition for review of the Tax Court's decision.

The question is whether the reorganization agreement gave rise to "a lien upon subsequent earnings" of the reorganized bank, in favor of the former depositors, within the signification of that term in the exemption provisions of section 3798(b) of the Internal Revenue Code.

Section 3798(b) provides that "Whenever any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has been released or discharged from its liability to its depositors for any part of their claims against it, and such depositors have accepted, in lieu thereof, a lien upon subsequent earnings of such bank or trust company, or claims against assets segregated by such bank or trust company or against assets transferred from it to an individual or corporate trustee or agent, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, such individual or corporate trustee or such agent, which shall diminish the assets thereof which are available for the payment of such depositor claims and which are necessary for the full payment thereof."

The reorganization agreement, which, as indicated, was entered into in 1932, after the bank had been closed for some months, was made among the bank, its stockholders, and the old depositors, as parties, and was executed by all of them. It was also approved by the Department of Trade and Commerce of the State of Nebraska, as a basis for permitting the reopening and operation of the bank. Under it, the stockholders provided the bank with a new capitalization of $20,000. As to the rights of the old depositors, it contained the following provision: "That each depositor in said bank hereby agrees to waive 75 per cent of his deposit * * * and relinquish same to the Farmers & Merchants Bank, Ceresco, Nebraska, and thereby reduce his claim against said bank to that extent, upon the condition, however, that the stockholders of said Farmers & Merchants Bank agree, and we, the undersigned stockholders of the reorganized Farmers & Merchants Bank, Ceresco, Nebraska, do hereby agree that out of the dividends declared upon our stock, the said 75 per cent so relinquished shall be paid to the depositors, before the stockholders, so agreeing, receive any dividends upon their stock; said 75 per cent so relinquished is to be in no way a charge against the Farmers & Merchants Bank or a liability thereof, but it is to be repaid only from the dividends on the stock above described when said dividends are declared and said dividends shall be declared when the consent therefor is obtained from the Department of Trade and Commerce, State of Nebraska, * * *."

It was the Tax Court's view that, under this provision, the old depositors had no actual hold of any nature, legal or equitable, upon any part of the bank's subsequent earnings and could in no way prevent the bank from arbitrarily accumulating or making such other use of the earnings as it saw fit, if it should refuse to declare dividends, even though it soundly would be able to make payments thereof and the Department of Trade and Commerce of the State would be willing to give its consent thereto. On this basis, the Tax Court concluded that the old depositors could not be said to

have "a lien upon subsequent earnings," within the exemption provisions of section 3798(b).

We do not believe, however, that the rights of the old depositors are entitled to be thus innocuously read under the object, terms and import of the reorganization agreement, or that a court of equity would regard itself as being utterly impotent in the situation to effectuate those rights.

Manifestly, the parties anticipated that the reorganized bank would be able to operate and make profits, or there could hardly have been any point in not allowing it to remain closed and be liquidated. Certainly, also, it was the intention in the making of the agreement that the relinquished deposit claims should be repaid, not as a matter of beneficence but of obligation, if the bank succeeded in making earnings from which this legally and soundly could be done. Any other interpretation would be unnatural and unreasonable. Nor has the bank ever sought to escape the force of this intention, but on the contrary it has faithfully endeavored to carry it out, from the time the agreement was made, by regularly making such payments from its earnings, in the form of declared dividends, which payments at the time here involved had reduced the amount of the relinquished deposit claims from $127,098.31 to $59,115.28. Such payments have been made by the bank directly to the old depositors, as the reorganization agreement by clear implication intended should be done. And the making of the payments has not been a matter of mere largess on the part of the bank, as the Tax Court seems to have believed, but the declaring of dividends for the purpose of making the payments to the old depositors, whenever possible, was a matter of imposed obligation under the agreement.

The agreement provided that the amount of the relinquished deposits "shall be paid to the depositors, before the stockholders * * * receive any dividends upon their stock * * * but it is to be repaid only from * * * dividends on the stock * * * when * * * declared and said dividends *shall be declared* when the consent therefor is obtained from the Department of Trade and Commerce,

State of Nebraska." (Emphasis added.) The language, "said dividends shall be declared," in our opinion necessarily imposed upon the bank the obligation of taking action to make such declarations for the benefit of the old depositors, and to request the Department of Trade and Commerce's consent thereto, whenever the bank had annual earnings that, after satisfying the requirements of Neb.Comp.St. 1929, § 8-142, as amended, Neb.Rev.St. 1943, § 8-143, for charging off any bad debts and increasing surplus, as prescribed by the statute, would be available for this purpose in prudent banking practice.

Of course, the old depositors would have no reach against the bank through an action at law, unless a formal dividend declaration had been made and the bank failed to make payment thereof to the depositors. But, as above suggested, a court of equity, it seems to us, would not be without power of interposition, in favor of the depositors, against such earnings as the agreement sought to charge with the repayment of the old deposit claims, under the bank's obligation to such depositors (not to the stockholders) to make declarations of dividends when they could be paid under statutory regulation and in prudent banking practice, and when the Department of Trade and Commerce would give its consent thereto. It may be added that it of course must be assumed that the Department of Trade and Commerce, as a matter of proper official responsibility, would act solely upon the basis of statutory prescription and sound supervisory practice in relation to the bank's situation.

The case therefore was not, as stated in the Tax Court's opinion, one where the old depositors simply accepted from the stockholders, as a substitute for the bank's previous liability, the mere general and unenforceable right of stockholders to receive dividends, if and when the bank might choose to declare them, such as was the situation in Peoples Bank v. Commissioner, 43 B.T.A. 589, upon which the Tax Court relied. The depositors exacted from the bank here a specific obligation, which the bank did not have to stockholders, to make declarations of dividends from earnings, for application upon their claims, when, as

the agreement stated, the Department of Trade and Commerce would consent thereto, and when, as the agreement implied, such payments could be made in legal and prudent banking practice.

The effect of all this was that, while the bank was released from liability for the payment of the old deposit claims as such, there was created in the depositors a special right to have the released claims repaid out of such earnings in the bank's hands as could legitimately and prudently, under statutory regulation and in sound banking practice, be used for this purpose, through the form of stockholders' dividends, with the approval of the Department of Trade and Commerce, and the bank was charged with the duty of so declaring and distributing such available earnings to the old depositors.

Since the substantive rights of the old depositors, as we have indicated, went beyond those of the stockholders and charged earnings of the character discussed above with the obligation of distribution, the provision in the agreement for having such earnings paid to the depositors as declared stockholders' dividends was of no controlling legal significance but was entitled to be treated in its effect as a mere matter of form of corporate action. It was formality through which a court of equity could properly penetrate in reaching to the heart of the depositors' rights, upon proof of the existence of such conditions as imposed upon the bank the duty of making distribution. And proof of such conditions as would enable a court of equity to act would not be legally unproduceable. What amount the bank had to set aside out of its earnings to satisfy statutory requirements would be readily establishable. Any right of the bank to withhold more, if it attempted to do so, on the basis of prudent banking in relation to its situation would also be soundly testable, to the extent at least of evidentially resolving the bank's arbitrariness or good faith in relation to the obligation of the agreement. Banking prudence in such a situation would not mean an absolute discretion. Equally would the Department of Trade and Commerce's willingness to have given its consent to a particular distribution, if its approval had

been sought, be adequately demonstrable by official testimony.

Earnings which could be properly found on the basis of these conditions to be available in the bank's hands for distribution would plainly represent funds charged with the payment of the waived deposit claims and with the obligation of being distributed to the old depositors. They constituted the only thing to which the depositors had a right to look for their money, and they were intended, as among the bank, the stockholders and the depositors, under the reorganization agreement, to be so applied and to that purpose alone. In that situation, we think a court of equity soundly would have jurisdiction to appropriate any such earnings in the bank's hands, so within the conditions of the reorganization agreement, directly to the old depositors, through the remedy or instrumentality of an equitable lien.

No precise and all-inclusive definition of an equitable lien is, of course, possible, because of its inherently flexible and varying nature as a device of equity. Cf. 15 Words and Phrases, Perm.Ed., Equitable Lien, page 49. One of the conventional general definitions is that "It is simply a right of a special nature over the thing [a res], which constitutes a charge or encumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action * * *." 4 Pomeroy's Equity Jurisprudence, 5th Ed., § 1233, p. 692. The modern tendency has been to extend the doctrine of equitable liens. 33 Am.Jur., Liens, § 18, pp. 427, 428. The Restatement, Restitution, § 161, adopts the broad concept that, "Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises." A substantial number of cases have approved the following definition: "An equitable lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation, or is implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings." See e.g.

Baranofsky v. Weiss, 120 Pa.Super. 126, 182 A. 47, 48; Fallon v. Worthington, 13 Colo. 559, 22 P. 960, 962, 6 L.R.A. 708, 16 Am.St.Rep. 231; Johnson v. Craig, 158 Fla. 254, 28 So.2d 696, 699; United States v. 1364.76875 Wine Gallons, More or Less, of Spirituous Liquors, D.C.Mo., 60 F.Supp. 389, 392.

But within any recognized definition of an equitable lien, we think a court of equity would impose such a lien, under the reorganization agreement in the present case, upon any subsequent earnings of the bank which the evidence showed were clearly available in the hands of the bank for the repayment of old deposit claims, in legal and prudent banking practice, and with the consent of the Department of Trade and Commerce. The reorganization agreement seems to us to indicate such an intention to charge and have these earnings appropriated to the payment of the old deposit claims as would satisfy even a rigid definition of an equitable lien.

That the term, "a lien upon subsequent earnings," in section 3798(b) of the Internal Revenue Code, was meant to include equitable liens would appear obvious, for, without the aid of some special statute, no lien upon subsequent earnings could be anything more than an equitable lien. As the Court of Claims said in Clinton Trust Co. v. United States, 52 F.Supp. 671, 679, 100 Ct.Cl. 348, "Congress cannot have intended a 'lien' in the sense of a security interest in existing property or in existing rights against third persons, as there could hardly be a lien in that sense upon subsequent earnings."

Nor is it necessary under section 3798(b) that such an equitable lien should have been given upon all of the bank's earnings, in order to make the tax exemption applicable. Such an interpretation would defeat the purpose of the section, for banking statutes generally make prescriptions for use of part of a bank's earnings,

at least under certain conditions. And the language used in section 3798(b) is not "all subsequent earnings." Also, the provision of the section that "no tax shall be assessed * * * which shall diminish the assets * * * which are available for the payment of such depositor claims and which are necessary for the full payment thereof" would seem clearly to imply the right to exemption, even though only a part of the bank's earnings is subject to a deposit-claims lien, if the imposition of the tax would diminish "the assets * * * available for the payment of such depositor claims."

It may further be added that the purpose of section 3798(b) manifestly is one of beneficent policy toward the depositors of insolvent banks rather than one of exemptive favor to the banks themselves. Cf. Clinton Trust Co. v. United States, 52 F.Supp. 671, 679, 100 Ct.Cl. 348. This purpose may not be lightly ignored, in any construction or application of the section, as between the Commissioner's or a Collector's attempt to treat it as a mere technical exemption and the right of the depositors of a previously distressed bank, who have released the bank from liability for part or all of their deposits and have accepted in lieu thereof a lien upon the bank's future earnings, to recoup the amount of their released claims.

It is admitted that the taxes here involved would diminish the assets available and necessary for the payment of the old deposit claims. And since, as we have indicated, the depositors had an equitable lien upon such subsequent earnings of the bank as could legally and prudently be used for the declaration of dividends and as the Department of Trade and Commerce would consent be paid, both of the requirements of the statute for the exemption have been fully met.

The decision of the Tax Court is accordingly reversed and the cause remanded.