### NEW BRUNSWICK TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 10091.

United States Court of Appeals Third Circuit.

Decided March 23, 1950.

Argued Feb. 23, 1950.

---

Martin W. Meyer, Washington, D. C., (A. Dudley Watson, New Brunswick, N. J., Robert Holt Myers, Washington, D. C., on the brief), for petitioner.

Irving I. Axelrad, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, and A. F. Prescott, Spl. Asst. to Atty. Gen., on the brief), for respondent.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

The question to be determined on this appeal is the taxpayer's liability for federal taxes for the year 1945. The Commissioner asserts liability and the Tax Court agreed with him.[1] The taxpayer does not dispute the amount of the tax, but its liability to pay any tax at all because of a statute which gives exemption, under certain circumstances, to reorganized banks and trust companies. Int. Rev. Code, Section 3798 (b), 26 U.S.C.A. § 3798(b).

The parties agree upon the facts. The taxpayer is a New Jersey banking corporation. It was closed by order of the State Banking Commissioner in 1933. It reopened after a plan of reorganization, drafted by a committee of depositors and approved by the Banking Commissioner, was accepted. Under the plan deposits of $5 and less were paid off in cash. As to the others, each depositor was to receive fifty per cent of his account in cash, fifty per cent in a new issue of preferred stock. The par value of the preferred shares was $10 but the depositors took them at $30. The preferred shares bear cumulative dividends at three per cent on the par value and are to be retired at $30 under circumstances which will be discussed later. Under the terms of the agreement dividends are to be paid on the common stock only after the preferred stock is all retired. The preferred stock has full voting rights.

In addition to the preferred stock the depositors received fifty-one per cent of the bank's common stock. The result of this arrangement is that the depositors by virtue of the preferred and common stock they now hold have an eighty-one per cent interest in the reorganized bank. The retirement value of the preferred stock issued under the plan is $1,413,819.99. At the close of the taxable year 1945, the taxpayer's total accumulated net earnings and free assets were $859,101.47. At that time none of the preferred stock had been retired.

Since the taxpayer claims exemption under the terms of a statute we turn to the statutory provision [2] to see if the taxpayer meets the qualifications there laid down.

It is agreed that the taxpayer qualifies as the type of institution to which the exemption statute refers. Although the Commissioner raises two points against the taxpayer's eligibility for the exemption we think only one of them is to be taken seriously.

1. 1949, 12 T.C. 1146.

2. Int.Rev.Code § 3798 (b), 26 U.S.C.A. § 3798 (b): "Whenever any bank or trust company, a substantial portion of the business of which consists of receiving deposits and making loans and discounts, has been released or discharged from its liability to its depositors for any part of their claims against it, and such depositors have accepted, in lieu thereof, a lien upon subsequent earnings of such bank or trust company, or against assets segregated by such bank or trust company or against assets transferred from it to an individual or corporate trustee or agent, no tax shall be assessed or collected, or paid into the Treasury of the United States on account of such bank, or trust company, such individual or corporate trustee or such agent, which shall diminish the assets thereof which are available for the payment of such depositor claims and which are necessary for the full payment thereof."

That one has to do with the question whether the depositors acquired, under the plan described above, "a lien upon subsequent earnings" of the bank. We do not need to consider the alternative phrase in the statute, "or against assets segregated by such bank," because there were not any such assets. Nor were there assets transferred to any trustee under the plan. We get down, therefore, to the single question whether, under the plan of reorganization which was adopted, the depositors have a lien against the bank's subsequent earnings.

We are perfectly willing to take the general attitude toward the statute which the taxpayer urges. It is well expressed by Judge Madden in the Court of Claims when he says that the policy is "that the United States does not, as a tax gatherer, desire to compete with the disappointed depositors of an insolvent bank * * *."[3] But such benevolent state of mind will not settle the question whether the arrangements made in the reorganization of this particular banking institution comply with the terms of the statute. Note that we are not dealing here with the part of the depositors' accounts which they were to receive in cash. The small depositors got their cash immediately, the larger depositors have long since received the fifty per cent of their deposits which it was agreed they would receive in cash. We deal only with the question whether the preferred shareholders who took their preferred shares plus fifty-one per cent of the common stock for half their deposits have a lien upon subsequent earnings of the bank.

It is apparent that it is going to take a soaring imagination to turn a shareholder into one who has a lien. The shareholders, preferred and common, are the owners of a corporate enterprise, not lien creditors or even general creditors. The reorganization transaction when analyzed shows a shift in the status of the depositors. As depositors they were creditors. As creditors of a failed bank their chances for being paid were probably only moderately good; in any event, there would have been delay had they

had to wait for liquidation to get their money, or part of it. To move matters along and keep the bank itself going they shifted from the position of creditors to that of owners. As owners they have such rights as the law of the state of New Jersey gives to preferred and common shareholders of a banking corporation.

A copy of the preferred share certificate is in evidence. The only thing which it gives a shareholder not found in the usual preferred share arrangement is that it is stipulated that the dividends are to be payable on the common stock only after the entire issue of preferred stock shall be retired at $30 a share plus accumulated dividends. This is no doubt a valid agreement among the parties. But we do not see how the language can be stretched to make it create a lien under the most liberal definition of that term.[4]

The preferred share certificates also provide that the preferred stock is subject to redemption at $30 per share and accrued dividends "upon procuring consent of the Commissioner of Banking and Insurance at the option of and in the matter determined upon by the Board of Directors." In the statement made to depositors to induce them to accept the plan it was represented that the preferred stock would be retired as rapidly as possible "using all net earnings in funds that can be released without endangering the strength of your bank."

We do not need now to decide whether (a) the representations made to the depositors go further than the agreement contained in the share certificate and (b) whether, if they do, the terms of the certificate shall control. We do not settle this question because we do not think in either document there is anything which creates a lien. We think the most these preferred shareholders have received is the right to have their stock redeemed at $30 plus accumulated dividends when the directors think it is a good thing for the bank to redeem it and when the Department of Banking of the state of New Jersey ap-

3. Clinton Trust Co. v. United States, 1943, 52 F.Supp. 671, 679, 100 Ct.Cl. 348.
4. In Farmers & Merchants Bank v. Commissioner, 8 Cir., 1949, 175 F.2d 846, the court, on page 849, gives a collection of definitions of the term "lien."

proves. While it is true, as we have recently held,[5] that courts will interfere when directors fail to fulfil the duties owed by those in their position, the enforcement of that duty is not dependent upon the existence of a lien. It is the obligation of all those persons who hold fiduciary positions.

Two other cases considering this statute have been cited to us and relied upon by both sides. They are Clinton Trust Co. v. United States, 1943, 52 F.Supp. 671, 100, Ct.Cl. 348, and Farmers & Merchants Bank v. Commissioner, 8 Cir., 1949, 175 F.2d 846. The discussion of the problem found in the opinions is helpful to us. But the decisions there cannot decide our case because the arrangements made with the depositors are not the same as those made here.

The decision of the Tax Court will be affirmed.

5. Kroese v. General Steel Castings Corp., 3 Cir., 1950, 179 F.2d 760.