**BENNETT CONSTRUCTION COMPANY, INC., Plaintiff,**

v.

**ALLEN GARDENS, INC., et al., Defendants.**

**No. 73CV515–W–4.**

United States District Court,
W. D. Missouri, W. D.

June 14, 1977.

---

B. Douglas Varner, Gage & Tucker, Kansas City, Mo., for plaintiff.

Milton C. Clark, Swanson, Midgley, Gangwere, Thurlo & Clarke, J. Whitfield Moody, First Asst. U. S. Atty., Thomas J. Leittem, Shughart, Thomson & Kilroy, R. Dennis Wright, Hillix, Brewer & Myers, Frank P. Sebree, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

By this action plaintiff Bennett Construction Company (Bennett) seeks to recover unpaid contract installments and retainages and unpaid expenses for extra labor and

materials expended in the construction of a low income housing project known as Allen Gardens. When first filed, this suit named as defendants the Secretary of the Department of Housing and Urban Development (HUD), mortgage insurer and present mortgagee of the Allen Gardens project; Allen Gardens, Inc., a not-for-profit Missouri corporation and owner of the Allen Gardens project; Charles F. Curry & Company (Curry), a private corporate lender and original mortgagee of the Allen Gardens project; Mr. M. C. Kenn, original trustee under the deed of trust on the Allen Gardens properties; and Mr. William H. Johnson, architect of the Allen Gardens project. As finally submitted, however, this action is limited solely to claims against defendant HUD and all other defendants have been dismissed by plaintiff.

As the only two remaining litigants, Bennett and HUD have submitted this case upon an agreed pretrial order which incorporates a designation of the legal issues remaining for the Court's determination and a complete stipulation of the facts, including the sum due plaintiff should it prevail on the issue of liability. Because the facts have been stipulated in the form of more than two hundred separate paragraphs, the Court will not endeavor to set those facts out in full but will only reference to those factual matters which are significant in the context of the ultimate decision in this case.

## BACKGROUND OF THE LITIGATION

In July, 1969, the Allen Chapel AME Church, an unincorporated association located in Kansas City, Missouri, submitted through Curry an application for mortgage insurance on a proposed low income multi-family housing project to be constructed in Kansas City. That application sought a commitment from the Federal Housing Administration, an organizational unit within HUD, to fully insure a loan equivalent to 100% of the estimated development costs of the project under the provisions of § 236 of the National Housing Act, 12 U.S.C. § 1715z–1. The provisions of that section as implemented by HUD are intended to spur the construction or rehabilitation of rental and cooperative housing for lower income families by means of federally insured private mortgage financing and federally funded interest reduction payments for the life of the insured mortgage.

In December, 1969, after application review, project appraisal and income analyses, site approval, and other internal agency procedures, HUD accepted the proposed Allen Gardens project as an insurable risk and invited the Allen Chapel Church to submit an application for conditional commitment for mortgage insurance on the project. That application was submitted and on May 21, 1970, HUD committed to insure a loan from Curry for 100% of the estimated development cost of the Allen Gardens project to a maximum of $1,317,000. The commitment was made with full knowledge that the project sponsor, Allen Chapel Church, had no financial assets or other resources to contribute toward the development of the project other than borrowed funds and future rental income which might be received from project tenants. On July 1, 1970, a not-for-profit corporation, Allen Gardens, Inc., was incorporated to function as the nominal owner and mortgagor of the Allen Gardens project. All necessary incorporation fees were paid from loan proceeds insured by HUD.

Following the insolvency of the construction company originally approved by HUD as general contractor on the project, Curry contacted plaintiff Bennett Construction Company. Plaintiff was assured by a Curry representative that as general contractor on the Allen Gardens project it would be paid, that the project was legitimate with a solvent sponsor which had sufficient funds available to it to pay construction costs, and that HUD was behind the project and committed to insure it. Bennett was not informed that Allen Gardens, Inc. had no funds of its own to invest in the project; however, Bennett neither conducted an in-

dependent inquiry into the financial status of the sponsor nor required it to produce a financial statement. On approximately August 8, 1970, plaintiff submitted to HUD the required contractor's cost breakdown which reflected a total estimated cost of construction of $1,043,322. That cost, which was acceptable to and approved by HUD, was subsequently established as the maximum figure payable to Bennett under the terms of the construction contract.

On September 18, 1970, initial closing of the project was held. At that time, plaintiff and Allen Gardens, Inc. entered into a cost plus construction contract by which Allen Gardens, Inc. agreed to pay Bennett as general contractor the cost of construction plus a fixed fee to a maximum of $1,043,322 upon full completion of the project, a term defined by the contract. Also as part of the initial closing, Allen Gardens, Inc. entered into a building loan agreement with Curry whereby Curry contracted to make a loan for the construction of the project in the sum of $1,317,000. In consideration of that loan, Allen Gardens, Inc. executed a deed of trust note payable to Curry in an amount equal to the loan and a deed of trust conveying the Allen Gardens properties to M. C. Kenn in trust for Curry. As required by HUD as a condition to its insurance commitment, the building loan agreement and the construction contract were executed on HUD standard forms. The mortgage documents were likewise prepared by HUD.[1]

Bennett began actual construction of the Allen Gardens project on October 16, 1970. Approximately one year later the first tenants moved into the project and on April 30, 1972, the Project Inspection Report (FHA Form 2449) was executed indicating substantial completion of the project. Bennett continued work on the project pursuant to the construction contract's warranty on latent defects until April 19, 1973, and at HUD's request until July 2, 1973. On that date an agency inspector advised Bennett that its construction responsibility had been completed. Federal Housing Administration officials certified on August 31, 1973, that the project was fully and satisfactorily completed. During the entire period of construction, Bennett acted totally in good faith and was always willing to proceed with and complete the project.

Subsequent to the date of substantial completion but prior to final completion of the project, Allen Gardens, Inc., defaulted on its obligations under the mortgage agreement with Curry. By the terms of the loan agreement, Allen Gardens, Inc., was to commence monthly payments of the loan principal on July 1, 1972. None of those principal payments, all of which were to be paid from funds other than loan proceeds, has ever been made. On March 1, 1973, Curry advised HUD that it intended to file a formal notice of default in the "very near future". That notice was formally filed with HUD on April 12, 1973. Bennett however, was never advised of the mortgagor's default commencing July 12th until after construction work had been completed.

Despite the default in July, 1972, Curry continued with the existing arrangement and did not act, as permitted by the provisions of paragraph 9 of the building loan agreement to either terminate the agreement and construction or to complete the project as attorney-in-fact for and in the name of Allen Gardens, Inc. Both before and after formal notice of default had been filed with HUD, several meetings were scheduled for final closing of the project. Those efforts to achieve final endorsement were futile, however, for the representatives of Allen Gardens, Inc., not only failed

---

1. Certain of the provisions of the documents executed at the initial closing are important both to a full understanding of this case and its ultimate resolution. Those provisions, however, will not be set out at this point but will be discussed in a more appropriate context in this memorandum.

to attend those meetings but also lacked the necessary funds to bring the mortgage current, a necessary condition to final closing of the project. By early June, 1973, Allen Gardens, Inc., was in arrears on construction interest payments as well as in default on principal payments. On June 18, 1973, Curry made its decision to assign the mortgage to HUD, pursuant to statutory authority. 12 U.S.C. § 1713(g). Assignment proceedings were completed on December 23, 1974, with the result that Curry retains no interest in the project and HUD is now mortgagee.

At the time that the mortgage assignment was executed, loan proceeds in the sum of $169,341.17 remained undisbursed. Of that amount, $165,395.00 was designated for payment to Bennett and represents the sum of one final construction draw and the 10% retainages withheld pursuant to the construction contract from all prior construction draws. As early as October, 1972, Curry had requested permission from the Federal Housing Administration to disburse the remaining loan proceeds but the request was refused because final endorsement had not occurred. A final application for insurance on the proposed advance of the last loan proceeds was made by Curry in January, 1973. HUD refused to insure any advance of the $169,341.17 at that time. Thereafter, in August, 1973, HUD through its representative advised Curry in writing that no further mortgage advances would be insured and further disbursement of any loan proceeds was disapproved. Since that date, neither Curry nor HUD have disbursed the remainder of the loan balance. Although HUD has expressed its willingness to insure and disburse all remaining loan proceeds, including payment of $165,-395.00 to Bennett, if final endorsement occurs, final endorsement cannot be accomplished so long as Allen Gardens, Inc., remains in default. Because Allen Gardens, Inc., has never in the past had the necessary funds or the financial incentive to close the project, it is apparent that final endorsement of the project is not even a remote possibility. On or about July 15, 1974, HUD decided for the first time to foreclose on the Allen Gardens project.

## DISCUSSION OF THE ISSUES, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

The matter ultimately at issue here is plaintiff's asserted claim to recover from HUD the sum of $165,395.00, which represents the total of one final construction draw and all retainages withheld from all construction payments made to plaintiff during the course of construction, plus an additional sum of $38,000.00 for extras incorporated into the Allen Gardens project. The parties have agreed that plaintiff is to be awarded the total amount of $203,395.00 should it prevail on the merits. Thus the issue before the Court is whether, in light of the stipulated facts, plaintiff Bennett Construction Company is entitled to any recovery against HUD.

Bennett asserts that it is entitled to recovery of these sums as a third party beneficiary of the building loan agreement. Alternatively in support of its claim, plaintiff urges that equitable considerations mandate recovery either on the theory that the sums constitute a fund which vested in plaintiff upon completion of construction or on the theory that plaintiff retains an equitable lien on the undisbursed loan proceeds.

In response, HUD initially claims there is no jurisdiction in this Court to decide this case on the merits. With respect to the merits, HUD argues first that plaintiff is barred from recovering as a third party beneficiary because the promisee of the loan agreement, Allen Gardens, Inc., upon whose contract rights Bennett relies, breached the agreement by its default in July, 1972. Second, HUD contends that plaintiff's equitable theories cannot support recovery for the reasons that there is no identifiable fund or res on which to impress an equitable lien, there has been no unjust enrichment which is a necessary element to support an equitable lien, and there is no

basis for equity to set aside the express contractual relations of the parties.

### Jurisdiction

As plaintiff's action is brought to recover funds now in the possession of HUD and is premised at least in part upon a contractual claim exceeding $10,000.00, defendant argues that this Court lacks jurisdiction because of Tucker Act limitations. Where non-tort claims are brought against the United States,[2] the Tucker Act, 28 U.S.C. § 1346 and § 1491, both provides for subject matter jurisdiction and waives the government's sovereign immunity. With respect to subject matter jurisdiction, § 1491 permits such suits in the Court of Claims without regard to the amount in controversy while § 1346(a)(2) gives jurisdiction to the district courts in such cases only when the claim does not exceed $10,000.00.

■ The Court has concluded that it does have jurisdiction to entertain this suit on its merits. Plaintiff Bennett does not rely on the Tucker Act to establish a waiver of sovereign immunity and is therefore not subject to the conditions of that Act which restrict the subject matter jurisdiction of the district courts.

■ For the waiver of immunity, Bennett looks to the National Housing Act, 12 U.S.C. §§ 1701 *et seq.*, which provides that in carrying out the purpose of the housing law, including development of § 236 low-income housing, the Secretary of Housing and Urban Development shall "be authorized in his official capacity, to sue or be sued in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1702. It appears clear that § 1702 does indeed constitute a waiver of sovereign immunity in cases arising under the National Housing Act. *Trans-Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370 (D.C.Cir.1976); *Ghent v.*

*Lynn*, 392 F.Supp. 879 (D.Conn.1975); *Brown v. Lynn*, 385 F.Supp. 986 (N.D.Ill. 1974).

There is some additional authority supporting the proposition that § 1702 waives sovereign immunity *and* grants subject matter jurisdiction to the district courts. *George H. Evans & Co. v. United States*, 169 F.2d 500 (3d Cir. 1948); *Ferguson v. Union National Bank*, 126 F.2d 753 (4th Cir. 1942); *James T. Barnes & Co. v. Romney*, 334 F.Supp. 657 (E.D.Mich.1971). *Contra, American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.*, 407 F.Supp. 164 (D.V.I. 1975); *Ghent v. Lynn, supra.* It is not, however, necessary to decide whether § 1702 gives jurisdiction as well as serving as a waiver of sovereign immunity for in this instance subject matter jurisdiction is conferred by other statutory sources.

■ Jurisdiction in this Court was established on September 20, 1973, when defendant HUD removed this cause from the Circuit Court of Jackson County, Missouri. Defendant's petition sets out 28 U.S.C. § 1441(a) as authority for removal of this particular action. Removal is permitted under that section if the case is one "which the district courts of the United States have original jurisdiction . . . ." The present matter is one

". . . to determine whether the Secretary of HUD has an obligation to plaintiff . . . that is not rooted in a contract between them, but rather on equitable rights generated by HUD's course of activities pursuant to federal statutes, including the contracts it has sponsored, and prescribed for others, as a condition of federal aid. *The claim of right is dependent on federal common law.*"

*Trans-Bay Engineers & Builders, Inc. v. Hills, supra* at 377. [Emphasis added.]

■ Because the determination of the issues here requires the application of federal

---

**2.** A suit for damages against the Secretary of the Department of Housing and Urban Development in his official capacity is a suit against

the United States. *Edelman v. Federal Housing Administration*, 382 F.2d 594 (2d Cir. 1967); *Ghent v. Lynn*, 392 F.Supp. 879 (D.Conn.1975).

law, this case "arises under the laws of the United States" and, therefore, is within the original jurisdiction of this Court. *Illinois v. City of Milwaukee,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1927); *Trans-Bay Engineers & Builders, Inc. v. Hills, supra; Ghent v. Lynn, supra.* Accordingly, removal was appropriate under the provisions of § 1441(a), and this Court has subject matter jurisdiction of this action. Any procedural irregularities or defects in the removal have not been objected to and thus are waived. *American Oil Co. v. McMullin,* 433 F.2d 1091 (10th Cir. 1970); *Jacobson v. Chicago, M., St. P. & P. R. Co.,* 66 F.2d 688 (8th Cir. 1933).

■ Although defendant's petition of September 20, 1973, does not cite to the provisions of 28 U.S.C. § 1442(a)(1), the Court is of the view that this action was also removable on the basis of that section. Because it is undisputed that the defendant was acting in an official capacity as Secretary of HUD during the course of events giving rise to this litigation, this Court's jurisdiction is further premised upon § 1442(a)(1) which permits removal of any civil action brought against an ". . . officer of the United States or any agency thereof . . . for any act under color of such office . . . ." *F. W. Eversley & Co. v. East N. Y. Non-Profit HDFC,* 409 F.Supp. 791 (S.D.N.Y.1976); *Lindy v. Lynn,* 395 F.Supp. 769 (E.D.Pa.1974).

### The Merits

Although Bennett has complied in all respects with its contractual obligations to fully complete the Allen Gardens project, it has not received the entire sum due it under the construction contract. First as mortgage insurer and subsequently as assignee of the mortgage and undisbursed loan proceeds, HUD has refused to release to Bennett the final contract installment payment and all contract retainages. That refusal is premised not on any deficiency in Bennett's performance but solely because Allen Gardens, Inc., has defaulted and there has been

no final closing or endorsement of the project. Having determined that this Court has proper jurisdiction of this action, it is now appropriate to consider, in turn, the several arguments pressed by plaintiff in support of its claim to those undisbursed loan proceeds which represent the final contract payment and the retainages.

### Third Party Beneficiary Contractual Claim

Although it is clearly apparent that Bennett has fully performed its obligations under the construction contract, it is equally apparent that Bennett can pursue no contractual claim against HUD or its assignor, Curry, based on that construction contract because they were not parties to that agreement. Instead, Bennett urges that it is a third party beneficiary of the building loan agreement between Allen Gardens, Inc., and Curry, original mortgagee of the project before assignment of its interest to HUD.

■ Several courts have ruled in cases involving virtually identical facts that a contractor in a position like Bennett's can sue as a third party beneficiary of a building loan agreement made between mortgagor and mortgagee of the project. *Trans-Bay Engineers & Builders, Inc. v. Hills, supra* at 378; *American Fidelity Fire Ins. Co. v. Construcciones Werl, supra* at 180–183; *Travelers Indem. Co. v. First National State Bank of N. J.,* 328 F.Supp. 208, 211 (D.N.J.1971). Rather than reiterate the lengthy reasoning of these courts, it will suffice to state that this Court is in accord and, therefore, finds that Bennett is a creditor third party beneficiary of the building loan agreement. Defendant's own regulations require that:

"The mortgagee shall be obligated, as a part of the mortgage transaction, to disburse the principal amount of the mortgage to, or for the account of, the mortgagor *or to his creditors* for his account and with his consent."

24 C.F.R. § 221.512 [Emphasis added]. Inasmuch as HUD assumed the obligations of

"lender" or "mortgagee" upon Curry's assignment and pursuant to paragraph 18 of the building loan agreement,[3] it is equally obligated by regulation to disburse proceeds to the mortgagor or the mortgagor's creditors. And as stated by Judge Young in the *American Fidelity* decision:

> ". . . nothing in the building loan agreement changes the aforementioned regulatory obligation of the mortgagee or his assigns to disburse the full principal amount of the mortgage to the creditors of the mortgagor for his account."

*American Fidelity Fire Ins. Co. v. Construcciones Werl, supra* at 182. In short, plaintiff Bennett is entitled as a creditor third party beneficiary of the building loan agreement to earned but undisbursed loan proceeds absent some other circumstance or matters which would bar contractual recovery.

Defendant urges that there are two matters which bar plaintiff's recovery as a creditor beneficiary. First, it is asserted that final closing of the project is a prerequisite to Bennett's receipt of the final contract draw and the 10% retainages. In its trial brief, HUD states:

> "Plaintiff knew full well of the necessity of a final closing and the risk involved that final closing would not be achieved. Such contractual provisions are not rare and plaintiff is not confronted with some burdensome provision that he has never had knowledge of nor confronted himself. Plaintiff knew full well the ramifications flowing from a failure to achieve final endorsement *and though no direct evidence exists to prove it in the instant case,* the government would suggest that the possibility of such contingencies arising is well planned for in the making of construction cost projections."

Brief at p. 44 [Emphasis added.]

HUD is correct in this foregoing statement to the extent that it admits that there is no evidence to support the proposition that Bennett was aware of any requirement that final closing occur before it received payment for work satisfactorily performed on the project. None of the stipulated facts in this case evidence that Bennett knew of such a requirement or that such a requirement in fact existed. Review of the documents executed at the initial closing reflects that no requirement of a final closing is anywhere set forth as a condition to release of the final contract installment and retainages. HUD regulations, moreover, do not impose a requirement of final closing prior to final payment to a contractor. HUD relies on the district court decision in *Trans-Bay,* 396 F.Supp. 265 (D.D.C.1975), for the proposition that the requirement of a final closing, as set forth in a HUD handbook,[4] was an implicit part of the contractual agreements pertaining to the development and construction of the Allen Gardens project. That decision has, however, been explicitly reversed on appeal. *Trans-Bay Engineers & Builders, Inc. v. Hills, supra.* As this Court has already noted in this case, the Court of Appeals in *Trans-Bay* noted that the documents executed in that case at initial closing made no mention that final closing must occur before the contractor recovered the construction holdback payments. That court rejected the district court's ". . . analysis of the rights and obligations of the parties not from the documents then signed and regulations then in existence but backwards, from a provision in the HUD handbook, though without enforceable status, and published unilaterally some time later." 551 F.2d at 379. This teaching is, in this Court's view, a proper and correct one. Accordingly, in the

---

**3.** Paragraph 18 of the building loan agreement provides in pertinent part: "This instrument shall be binding upon the parties hereto and their respective successors and assigns." It should also be noted that the definition of "mortgagee" in 12 U.S.C. §§ 1707 and 1713(a) encompasses the original lender and his successors and assigns.

**4.** The HUD Handbook on Construction Period to Final Closing for Project Mortgage Insurance, prepared in 1972, prohibits the release of holdbacks until final closing. See *Trans-Bay Engineers & Builders, Inc. v. Lynn,* 396 F.Supp. 265, 271 (D.D.C.1975).

absence of any evidence that Bennett knew of any requirement of final closing· at the time of initial closing and absence of evidence that such a requirement actually existed at that time, the finding must be that lack of final closing is no bar to recovery of the loan proceeds here in question.

The second matter which is said to bar Bennett's contractual recovery of the undisbursed loan proceeds is the default of Allen Gardens, Inc., in its loan obligations commencing July, 1972. HUD points specifically to the provisions of paragraph 4(e) of the building loan agreement which provides in part:

> "(e) The Borrower [Allen Gardens, Inc.] agrees that the loan shall at all times remain in balance. The Lender [Curry] shall in accordance, with the provisions of this agreement, continue to advance to the Borrower funds out of the proceeds of the loan as long as the loan remains in balance and the Borrower is not in default . . . ."

As Allen Gardens, Inc., promisee of the building loan agreement, defaulted prior to full completion of the project, the provisions of § 4(e) would appear to relieve the lender or its assigns of any further regulatory and contractual obligation to disburse loan proceeds to that promisee. HUD asserts that Bennett has no greater rights than its promisee, Allen Gardens, Inc., and, accordingly, cannot recover loan proceeds yet undisbursed.

■ In general, a creditor beneficiary assumes the legal position of its promisee; while it can assert the rights of its promisee, it is also bound by the concomitant obligations. Thus if a promisee defaults in performance of its obligations the beneficiary generally cannot enforce against the promisor the rights of the promisee. *Trans-Bay Engineers & Builders, Inc. v. Hills, supra* at 378; *Restatement of Contracts* § 140.

■ Because of the particular circumstances of this case, the Court has concluded that Bennett is not a beneficiary bound by the foregoing general principles of law and thus can enforce the obligation of the promisor, Curry, and its assignee, HUD, to disburse loan proceeds even though the promisee has defaulted. The facts are clear that Bennett has fully and satisfactorily completed construction of the Allen Gardens project, a result which was the ultimate purpose of the various agreements executed by the parties. The facts are also clear that plaintiff was permitted—in fact, requested—to complete construction of the project *after* HUD and Curry had knowledge of or reason to know of the default of Allen Garden's, Inc. As has been stated:

> ". . . the [contractor], who has succeeded to the legal position of its promisee, has completed performance of the housing project. And while said performance may be 'defective' in the sense that it was preceded by a default, nevertheless the law is clear that the 'promisor's duty is not discharged by the defective performance of a condition or of a return promise if he accepts the performance with knowledge of or reason to know of the defects . . .' [Restatement of Contracts § 298(1)]."

*American Fidelity Fire Ins. Co. v. Construcciones Werl, supra* at 182. In accord with this statement from Judge Young and whether the remedy is labeled contractual, quasi-contractual, or equitable, this Court holds that Bennett is entitled as a third party beneficiary to recover the undisbursed loan proceeds representing the final contract draw and retainages.

### Equitable Lien Claim

■ Bennett secondly argues that it should receive the undisbursed loan proceeds here in question as a matter of equity. Plaintiff claims that upon successful completion of the project an equitable lien attached to those loan proceeds originally designated for payment to it as construction contractor. As the term itself implies, an equitable lien is a matter of equity and ". . . arises either from a written contract which shows an intention to charge

some particular property with a debt or obligation, or is implied and declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings." *Farmers & Merchants Bank v. Commissioner of Internal Revenue*, 175 F.2d 846, 849 (8th Cir. 1949).

■ First, it must be determined if there is particular property, an identifiable res, upon which an equitable lien can be impressed.

Upon consideration of the various contractual documents and financing agreements here in evidence, the conclusion is inescapable that the remaining undispursed loan proceeds were intended by the parties to be paid to Bennett in return for its full and satisfactory completion of the project. HUD has certified that Bennett has performed that obligation. From the time the project was initially closed, the final contract draw and holdback retainages still in HUD's hands were specifically designated as part of the total sum due Bennett once it had fully performed and as such constitute an identifiable res. *F. W. Eversley & Co. v. East N. Y. Non-Profit HDFC*, 409 F.Supp. 791, 799 (S.D.N.Y.1976); *American Fidelity Fire Ins. Co. v. Construcciones Werl, supra* at 183. Even if those undispursed proceeds have now been commingled with other general HUD accounts, they continue to retain an identity as loan proceeds originally earmarked and intended for dispursal to the project contractor.

■ As there is an identifiable res, the further consideration is whether the present circumstances give rise to an equitable lien. In this Court's view and "out of general considerations of right and justice", the only conclusion properly drawn from the record in this cause is in the affirmative. Further, because of the very significant role played by HUD in the project, it is not inappropriate to find HUD liable and compel it to deliver loan proceeds now in its possession to plaintiff even though there was no express contractual relation between those two parties. Even assuming that Bennett had no contractual remedy as a third party beneficiary, for reasons of equity the loan proceeds are due plaintiff for its work done. Any legal obstacles to recovery ". . . are *surmounted* and transcended by equitable considerations." *American Fidelity Fire Ins. Co. v. Construcciones Werl, supra* at 184.

Because of the statutory scheme or otherwise, HUD was more than simply the mortgage insurer in the development and construction of this project. "[It] was the guiding spirit behind the entire project." *Trans-Bay Engineers & Builders, Inc. v. Hill, supra* at 381. The agency authored all contractual documents; supervised architectural planning and construction progress; and controlled release and disbursal of any and all mortgage proceeds. Even in the earliest stages of project development, HUD was highly involved and largely responsible for the form and direction of the project through its project appraisals and evaluations. The ultimate responsibility for approval of Allen Gardens, Inc., as project sponsor and owner was HUD's. It knew from the beginning that Allen Gardens, Inc., was incapable of offering any financial support to the project development. At one point, one unit of HUD, the FHA Rapid Processing Team, concluded that the project was not feasible for the reason, among others, that the project sponsor lacked necessary funds to make any investment in the project. However, after accepting the assurances of the Allen Chapel Church that it could "move ahead" with the development, the team's initial decision to recapture project funds was suspended. The sum and substance of the relationship between HUD and the nominal owner of the project is that Allen Gardens, Inc., was a "creature of HUD", *F. W. Eversley & Co. v. East N. Y. Non-Profit HDFC, supra* at 797, used to effect a governmental program of low-income housing. Even after the literal demise of Allen Gardens, Inc., the project and construction continued primarily at the insistence of HUD.

Because of contractual or statutory safeguards, the only party subject to incur losses on the project was the plaintiff. The mortgagor's financial investment was fully insured. HUD has the remedy of foreclosure on the project. Allen Gardens, Inc., has no personal liability because of express contractual provisions limiting that liability and because it has no assets. What HUD urges now is that losses occasioned by the failure of this governmental project should be imposed on the private contractor who fully and satisfactorily supplied the labor and materials to build that project.

This Court agrees with the following statement of the Court of Appeals for the District of Columbia which effectively disposes of HUD's view of the equities:

"Under HUD's view, the contractor alone is not protected, and is indeed even unable to consider the mechanic's lien available in ordinary commerce. HUD argues that this loss to the contractor, who fully performed, resulted from a conscious contractual allocation of risk by all the parties involved and was the result intended by Congress. This simply does not square with our appraisal of the realities, or our notions of good sense and fair dealing.

\* \* \* \* \* \*

". . . [H]ere, the no-asset owner was created and permitted to enter into the agreements for the convenience of the government in effectuating the section 236 program. A court of equity has the power to forestall a cosmetic fraud based on the niceties of the contractual arrangements constructed by HUD, and to avoid unjust enrichment from the service rendered".

*Trans-Bay Engineers & Builders, Inc. v. Hills, supra* at 382. [Footnotes and citations omitted.]

The Court is convinced that HUD will be unjustly enriched should it not be required to compensate plaintiff for its performance. Although it may be unfortunately true that the government will lose money if it now proceeds to foreclose on the project, that fact does *nothing* to diminish the unjust enrichment which accrued to HUD at the time the project was fully completed. *F. W. Eversley & Co. v. East N. Y. Non-Profit HDFC, supra* at 800. The stipulated evidence shows that plaintiff expended approximately $1,023,000 in labor and materials on the project not including additional sums for extras. Even if plaintiff were to recover more than the stipulated damages, it would still realize a loss. Agency officials do not dispute the certified account statements which reflect that the actual costs associated with construction of the Allen Gardens project were approximately $1,400,000. It is clear that Bennett has rendered valuable services which equity and justice require be compensated by requiring the disbursal of the loan proceeds now held by HUD but originally intended to be paid to the general contractor in return for his successful construction of the project. In conclusion this Court finds that plaintiff, who fully performed his obligations in full good faith, is entitled to recover under the theory that an equitable lien attached to the undispursed proceeds representing the final contract draw and contract retainages.

Because the parties have stipulated the sum to be awarded to plaintiff should it prevail on the merits, the Court will direct the Clerk of the Court to enter judgment for plaintiff in that amount of $203,395.00. The parties are in dispute, however, with respect to any award of interest on that amount. Plaintiff seeks interest on the entire judgment from May 30, 1972, a date which represents the thirtieth day after the date of substantial completion of the project. The construction contract, however, provides in Article 3C that the "balance due the Contractor hereunder shall be payable upon the expiration of 30 days after the work hereunder is *fully* completed. . . ." Based upon this provision of the

construction contract, the Court is of the view that the date upon which interest should begin to accrue is the thirtieth day following the date marking full completion of the project. The Court finds from the evidence in this cause that the project was fully completed within the meaning of Article 3C of the construction contract on July 2, 1973. On that date, plaintiff was advised by FHA inspection officials that all construction responsibilities on the project were completed. Although certain other HUD and FHA officials did not officially certify full and satisfactory completion of the project until a short time thereafter, it is clear that plaintiff had completed the project for all purposes on July 2, 1973. Therefore, interest on the judgment is to be calculated and assessed from the thirtieth day following that date, or from August 2, 1973.

Accordingly, for all of the foregoing reasons, the Court finds in favor of plaintiff and, therefore, it is hereby

ORDERED that the Clerk enter judgment for plaintiff and against defendant in the sum of the stipulated damages of $203,-395.00 plus interest computed at the rate of six percent (6%) per year from August 2, 1973.